EASTERN STATES PETROLEUM COR-
PORATION, Appellant,

v.

William P. ROGERS, Attorney General of
the United States, et al., Appellees.

No. 15109.

United States Court of Appeals
District of Columbia Circuit.

Argued March 18, 1960.

Decided May 12, 1960.

Petition for Rehearing en Banc Denied
June 7, 1960.

Mr. Gerard R. Moran, Newark, N. J., of the bar of the Supreme Court of Virginia, pro hac vice, by special leave of court, with whom Mr. Edwin G. Martin, Washington, D. C., was on the brief, for appellant.

Mr. Seymour Farber, Atty., Dept. of Justice, with whom Asst. Atty. Gen. George C. Doub, Messrs. Oliver Gasch, U. S. Atty., and Alan S. Rosenthal, Atty., Dept. of Justice, were on the brief, for appellees.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

1. Specifically, the importers' position is that a provision in the Reciprocal Trade Agreements Act then in force, 19 U.S.C.A. § 1351, prohibited the President from increasing the duty by more than fifty percent. The importers further contend that if, as the Court of Customs and Patent Appeals held, such limitation does not apply to the type of increase here involved, there are no constitutionally adequate statutory standards to guide the President in the exercise of his rate-revising authority.

BAZELON, Circuit Judge.

This appeal from the District Court relates to appellant's attack, begun in the United States Customs Court some eight years ago, upon the tax rate imposed upon petroleum imports between January 1, 1951 and October 11, 1952. The Customs Court proceedings were stayed pending the outcome of two other cases raising substantially identical questions. The importers in these cases contended that the President's proclamation increasing the duty from one-fourth to one-half cent per gallon was contrary to statute and an unconstitutional exercise of power.[1] The Court of Customs and Patent Appeals ultimately rejected these claims and the Supreme Court denied certiorari.[2]

Appellant, whose case is still pending in the Customs Court, then brought the instant suit to enjoin the Attorney General, the Secretary of the Treasury, and their subordinates from enforcing the tax through proceedings in the customs courts.[3] The complaint asserted that, as a result of the unfavorable decisions in the two companion cases, appellant's opportunity to secure recognition of its constitutional rights in the customs courts has become "so onerous, hazardous and speculative that it constitutes an inadequate remedy * * * which plaintiff may by-pass" to secure redress in a tribunal with statutory authority to enjoin administrative officials. It also asserted that Article III and the due process clause of the Constitution entitle it to have its constitutional claims adjudicated in a court created under Article III. Appellant requested that a three-

2. United States v. Metropolitan Petroleum Corp., 42 CCPA 38, certiorari denied, 1954, 348 U.S. 858, 75 S.Ct. 82, 99 L.Ed. 676; United States v. American Bitumuls & Asphalt Co., 246 F.2d 270, 44 CCPA 199, certiorari denied, 1957, 355 U.S. 883, 78 S.Ct. 150, 2 L.Ed.2d 113.

3. This refers to both the Customs Court, and the Court of Customs and Patent Appeals.

judge court be convened, pursuant to the provisions of 28 U.S.C. § 2282 (1958).

The Government moved to dismiss the complaint for lack of jurisdiction. District Judge McGarraghy, sitting alone, granted the Government's motion. Appellant thereupon applied to the Chief Judge of this Circuit for an order designating two additional judges to complete a three-judge district court. Chief Judge Prettyman denied the motion.[4] Appellant then sought review from Judge McGarraghy's ruling by direct appeal to the Supreme Court, and moved for leave to file a petition for a writ of mandamus against Chief Judge Prettyman and District Judge McGarraghy. The Supreme Court dismissed the appeal[5] and denied the motion.[6] Appellant thereupon prosecuted the present appeal from the dismissal below.[7]

■ We think the District Court correctly decided that it lacked jurisdiction. Under the distribution of judicial power which Congress has established, the Customs Court has *exclusive* jurisdiction to review on protest the decisions of any collector of customs * * *." 28 U.S.C. § 1583 (1958) (emphasis supplied). Conversely, 28 U.S.C. § 1340 provides that "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for * * * revenue from imports or tonnage *except matters within the jurisdiction of the Customs Court."* 28 U.S.C. § 1340 (1958) (emphasis supplied). This jurisdictional scheme is not limited to non-constitutional matters, for it is clear that the customs courts can and do, as in the two companion cases, pass upon constitutional questions. Horton v. Humphrey, D.C.D.C., 146 F.Supp. 819,

821 (3-judge court), affirmed per curiam, 1956, 352 U.S. 921, 77 S.Ct. 224, 1 L.Ed. 2d 157; Morgantown Glassware Guild, Inc. v. Humphrey, 98 U.S.App.D.C. 375, 236 F.2d 670, certiorari denied, 1956, 352 U.S. 896, 77 S.Ct. 133, 1 L.Ed.2d 87. Decisions of the Court of Customs and Patent Appeals are reviewable in the Supreme Court on writ of certiorari, 28 U.S.C. § 1256 (1958).

■ Appellant contends, however, that the District Court has jurisdiction notwithstanding the exception in § 1340, since this is not a case "arising under any Act of Congress providing for * * * revenue from imports * * *." Rather, they contend it is a case "aris[ing] under the Constitution, laws, or treaties of the United States," and thus within the ambit of 28 U.S.C. § 1331 (1958). Section 1331 vests federal question jurisdiction in the district courts and, unlike § 1340, contains no exception relating to Customs Court jurisdiction. But we do not agree that Congress' failure to provide an exception to § 1331 similar to that specified in § 1340 indicates an intent to open a loophole in its clear purpose to exclude customs cases from the district courts. When Congress provides a specific judicial remedy, relief may generally be accorded only through the specified procedure. Cf. Lichter v. United States, 1948, 334 U.S. 742, 789–793, 68 S.Ct. 1294, 92 L.Ed. 1694; Lockerty v. Phillips, 1943, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339. Moreover, the right to equitable relief presupposes the nonexistence of an adequate remedy at law. The customs courts provide an adequate remedy except in cases of extreme hardship, Horton v. Humphrey, supra. The fact that the customs courts are likely

4. 1959, 105 U.S.App.D.C. 219, 265 F.2d 593.

5. Eastern States Petroleum Corp. v. Rogers, 1959, 361 U.S. 7, 80 S.Ct. 50, 4 L. Ed.2d 49.

6. Eastern States Petroleum Corp. v. Prettyman, 1959, 361 U.S. 805, 80 S.Ct. 93, 4 L.Ed.2d 56.

7. Our jurisdiction to review the action of the District Court is not questioned. See

Wicks v. Southern Pacific Co., 9 Cir., 231 F.2d 130, certiorari denied Wicks v. Brotherhood of Maintenance of Way of Emp. Southern Pac. Co., 1956, 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471.
   Appellant protected its right of appeal to this court by securing from the District Court extensions of the time in which to docket the record on appeal.

to reject appellant's constitutional claims does not make this a case of unusual hardship. Cottman Co. v. Dailey, 4 Cir., 1938, 94 F.2d 85, 89.

Appellant attacks the foregoing construction of these jurisdictional statutes on the ground that, at some stage of the litigation, it is constitutionally entitled to have its constitutional claims heard and determined in an Article III court, and that such a hearing must be available as of right and not as a matter of discretion.

There is at the outset considerable doubt as to whether the customs courts are legislative rather than Article III courts. Some years ago, the Supreme Court held that the Court of Customs Appeals (now the Court of Customs and Patent Appeals) was a legislative court, Ex parte Bakelite Corp., 1929, 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789; that is to say, it was a court created under the congressional power "to lay and collect Taxes, Duties, Imposts and Excises," U.S.Const. art. I, § 8, and not under the power to "ordain and establish" courts inferior to the Supreme Court, U.S. Const. art. III, § 1. But Congress has recently revised the statutes creating the customs courts and stated that they are "hereby declared to be * * * court[s] established under article III of the Constitution of the United States." 28 U.S.C. §§ 211, 251 (1958). Appellant contends, however, that such declaration is ineffective to create an Article III court because the Supreme Court said in Bakelite that "whether a court is of one class or the other [does not] depend on the intention of Congress * * * the true test lies in the power under which the court was created and in the jurisdiction conferred." 279 U.S. at page 459, 49 S.Ct. at page 416. But see 1 Moore, Federal Practice § 0.4[4] (1959).

We do not decide, however, whether the expression of congressional intent is sufficient to transform the customs courts into Article III tribunals. For even if the customs courts are still legislative courts we think appellant's argument must fail. It was previously, and we think correctly rejected in Riccomini v. United States, 9 Cir., 1934, 69 F.2d 480, 483–484.

■■ We recognize, as appellant argues, that "a construction of the statute which would deny all opportunity for judicial determination of an asserted constitutional right is not to be favored." Lockerty v. Phillips, 1943, 319 U.S. 182, 188, 63 S.Ct. 1019, 1023, 87 L.Ed. 1339; see Lynch v. United States, 1934, 292 U.S. 571, 586–587, 54 S.Ct. 840, 78 L.Ed. 1434. And we assume, for present purposes, that the congressional power to confer and withdraw federal jurisdiction is itself subject to constitutional limitations, including those of due process. Crowell v. Benson, 1932, 285 U.S. 22, 56, 52 S.Ct. 285, 76 L.Ed. 598; Battaglia v. General Motors Corp., 2 Cir., 169 F.2d 254, 257, certiorari denied 1948, 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425; see Hart & Wechsler, Federal Courts and the Federal System 312–40 (1953). But this is not a case where there is an asserted constitutional right without a constitutionally adequate remedy. Certiorari may be sought in what is obviously an Article III court. And even in cases where an adverse decision of the customs courts involving constitutional questions stands unreviewed, we do not think the taxpayer is denied due process. In our view, the distinctions between the customs courts and the district courts do not rise to a level at which it may be said that final adjudication of constitutional questions in the customs courts offends the requirements of due process. Judges of the customs courts, like judges of Article III courts, are appointed by the President, with the advice and consent of the Senate, and serve during good behavior.[8] Customs courts entertain

---

8. See 28 U.S.C. § 213 (Court of Customs and Patent Appeals), § 252 (Court of Customs), § 44 (circuit courts), § 134 (district courts) (1958).

Judges of the Customs Court receive the same salary as district judges, compare 28 U.S.C. § 252 (1958) with 28 U.S.C. § 135 (1958); judges of the Court

"cases and controversies" within the meaning of Article III, as shown by the fact that these cases are reviewable by the Supreme Court under its appellate jurisdiction.[9] We therefore reject appellant's constitutional objections to its exclusion from the District Court.

■ The only remaining question is whether the District Court was authorized to dismiss the complaint without requesting the convening of a three-judge court.[10] Prior to 1942, the law was well settled that "the provision requiring the presence of a court of three judges necessarily assumes that the District Court has jurisdiction" and "does not require three judges to pass upon this initial question of jurisdiction." Ex parte Poresky, 1933, 290 U.S. 30, 31–32, 54 S.Ct. 3, 4, 78 L.Ed. 152.

Appellant asserts, however, that the 1942 amendment providing that "A single judge shall not * * * dismiss the action" has overturned the prior rule.[11] Although there are some shreds of legislative history to support this view,[12] consistent judicial construction has rejected it. In White v. Gates, 102 U.S.App.D.C. 346, 253 F.2d 868, 869, certiorari denied, 1958, 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147, this court said, "without convening a three-judge court * * * a single judge may dismiss a complaint that * * * fails to raise a substantial constitutional question." The Ninth Circuit reached the same conclusion in Wicks v. Southern Pacific R. R., 9 Cir., 231 F.2d 130, certiorari denied, Wicks v. Brotherhood of Maintenance of Way Emp. Southern Pac. Co., 1956, 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471. And in Jacobs v. Tawes, 4 Cir., 1957, 250 F.2d 611 the Fourth Circuit held that a single judge may dismiss an application for a three-judge court if the district court, no matter how consti-

of Customs and Patent Appeals receive the same salary as circuit judges, compare 28 U.S.C. § 213 (1958) with 28 U.S.C. § 44(d) (1958).

9. United States v. Stone & Downer Co., 1927, 274 U.S. 225, 232–233, 47 S.Ct. 616, 71 L.Ed. 1013; see, e. g., Norwegian Nitrogen Products Co. v. United States, 1933, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796; cf. Pope v. United States, 1944, 323 U.S. 1, 13–14, 65 S.Ct. 16, 89 L.Ed. 3. See generally, Robertson & Kirkham, Jurisdiction of the Supreme Court of the United States, §§ 248–249 (2d ed. Wolfson & Kurland 1951).

10. 28 U.S.C. § 2282 (1958) provides that an "injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted * * * [except] by a district court of three judges under section 2284 of this title."

11. 28 U.S.C. § 2284 now reads in pertinent part:
"In any action or proceeding required by Act of Congress to be heard and determined by a district court of three judges the composition and procedure of the court, except as otherwise provided by law, shall be as follows:
"(1) The district judge to whom the application for injunction or other relief is presented shall constitute one member

of such court. On the filing of the application, he shall immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge. Such judges shall serve as members of the court to hear and determine the action or proceeding.

&ast; &ast; &ast; &ast; &ast;

"(5) Any one of the three judges of the court may perform all functions, conduct all proceedings except the trial, and enter all orders required or permitted by the rules of civil procedure. *A single judge shall not* appoint a master or order a reference, or hear and determine any application for an interlocutory injunction or motion to vacate the same, or *dismiss the action*, or enter a summary or final judgment. The action of a single judge shall be reviewable by the full court at any time before final hearing." [Emphasis supplied.]

12. Appellant places particular reliance upon a report of the Bar Association of the City of New York stating that it believed the bill would overrule Ex parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152, and that this result was desirable. See H.R.Rep. No. 1677, 77th Cong., 2d Sess. 5 (1942). But there is no indication that any member or committee of Congress embraced this suggestion or anticipated such a result.

tuted, lacks jurisdiction. Finally, Chief Judge Prettyman, in an earlier phase of this litigation, reached the same conclusion. 1959, 105 U.S.App.D.C. 219, 265 F.2d 593. As these decisions make clear, the provision of § 2284 precluding single-judge dismissal, along with the other procedural requirements of that section, becomes operative only after a three-judge court is convened. This is implied from the introductory passage of § 2284, reprinted in the margin at note 11.

The action of the District Court is therefore

Affirmed.

Fahy, Circuit Judge, dissented.