Leo B. LANDSBERGER et al., Plaintiffs,

v.

Orville F. FREEMAN, Defendant.

Civ. A. No. 1103–63.

United States District Court
District of Columbia.

May 14, 1963.

Jack Marshall Stark, Ross, Stark, Matzkin & Day, Washington, D. C., Clifford E. Simon, Jr., Shoaff, Keegan & Baird, Fort Wayne, Ind., for plaintiffs.

David C. Acheson, U. S. Atty., Charles T. Duncan, Principal Asst. U. S. Atty., Joseph M. Hannon and Gil Zimmerman, Asst. U. S. Attys., for defendant.

SIRICA, District Judge.

In this case the plaintiffs filed a complaint in which they allege, in substance, that 7 U.S.C.A. § 1334(a)(b) and (c)(1), and 7 U.S.C.A. § 1336, as amended by Act of September 27, 1962, 76 Stat. 621, are unconstitutional in that they contravene Article 5 of the Amendments to the Constitution of the United States.

At the same time, the plaintiffs filed a motion requesting the convening of a three-judge court. The defendant filed an opposition to this motion, supported by points and authorities attached thereto; and also made a motion to dismiss or in the alternative for summary judgment.

Before proceeding any further the Court will direct counsel's attention to some of the cases concerning the duty of a single-judge court in connection with this kind of application.

■ Some of these decisions read as follows: A single judge may dismiss a complaint without convening a three-judge court if the complaint fails to raise a substantial constitutional question. White v. Gates, 102 U.S.App.D.C. 346, 253 F.2d 868 (1958), cert. denied, 356 U. S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958).

■■ The provision of 28 U.S.C.A. § 2284 precluding a single judge dismissal, along with other procedural requirements of that section, becomes operative only after a three-judge court is convened. Eastern States Petroleum Corp. v. Rogers, 108 U.S.App.D.C. 63, 280 F.2d 611 (1960).

It is well settled that in order to justify the convening of a three-judge court, the constitutional question raised must be substantial and a mere assertion of unconstitutionality is insufficient. It must appear that the question is a reasonably debatable one, and if the point raised in support of the allegation of repugnance to the Constitution is one that has been determined by binding decisions of the Supreme Court, this circumstance precludes the question from being regarded as substantial. Jasper v. Sawyer, 100 F. Supp. 421 (D.C.D.C.1951), citing California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938).

■ As has been stated by the Supreme Court, "the three judge procedure is an extraordinary one, imposing a heavy burden on federal courts, with attendant expense and delay. That procedure, designed for a specific class of cases, sharply defined, should not be lightly extended." Oklahoma Gas & Elec. Co. v. Oklahoma Packing Co., 292 U.S. 386, 391, 54 S.Ct. 732, 734, 78 L.Ed. 1318 (1934).

■ Therefore it is well settled from a consideration of these cases that a single-judge court has the duty initially of determining whether the complaint raises a substantial constitutional question. If no substantial constitutional question is presented, then there is no basis for convening a three-judge court pursuant to 28 U.S.C.A. §§ 2282 and 2284, and the single judge court may then properly go on to dispose of the litigation in the normal fashion.

■ In this case the Court has read and considered carefully, in the time

available, the memoranda filed by counsel prior to today. The Court has considered the arguments that have been made by able counsel on both sides, who are more familiar with this case than the Court. The Court feels that time is of the essence in this case and that a decision should be made at this time. Accordingly, the Court will state briefly the reasons for it's decision.

In this connection, the Court will allude to the case that has been discussed here of Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). The Court has briefed that case and will quote from it because the Court feels that there is some very pertinent language that is applicable to the situation at hand. This opinion was written by Mr. Justice Jackson.

The plaintiff in that case operated a small farm in Ohio, and he filed a complaint against the Secretary of Agriculture and others to enjoin the enforcement of a marketing penalty levied against him under the Agricultural Adjustment Act.

Under the Act the plaintiff had been designated as having a wheat acreage allotment of 11.1 acres but instead of abiding by the allotment the plaintiff sowed 23 acres and harvested an excess of 239 bushels. This marketing excess was subjected to a penalty of $.49 a bushel or a total of $117.11. The plaintiff refused to pay the penalty and did not seek to avoid it by storing the excess or delivering the excess to the Department of Agriculture. It is to be noted that this latter procedure by which a farmer can avoid a penalty is in effect today also.

The District Court enjoined the enforcement of the penalty based on its opinion that the referendum held among the wheat producing farmers was invalidated by a speech which the Secretary of Agriculture had made to the farmers of the country urging approval of a marketing quota. The Court held that the District Court had committed manifest error.

After disposing of the latter ground the Court considered the allegations of the plaintiff that the Agricultural Act's provisions for marketing quotas were unconstitutional because they were not sustainable under the Commerce Clause or consistent with the due process clause under the Fifth Amendment. In connection with the objection raised under the Commerce Clause, the Court reviewed in detail its prior decisions in this area and the powers of Congress to control those items which affect interstate commerce. The Court also reviewed the economics of the farm program and the effect on prices of an abundance of wheat. The plaintiff had argued that his activity was local in character and was but a small percentage of the wheat crop produced in the United States. In answer to this and in concluding that the Congress could regulate the marketing of wheat, the Court said:

"But even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce, and this irrespective of whether such effect is what might at some earlier time have been defined as 'direct' or 'indirect.'

\*　　\*　　\*　　\*　　\*　　\*

"The maintenance by government regulation of a price for wheat undoubtedly can be accomplished as effectively by sustaining or increasing the demand as by limiting the supply. The effect of the statute before us is to restrict the amount which may be produced for market and the extent as well to which one may forestall resort to the market by producing to meet his own needs. That appellee's own contribution to the demand for wheat may be trivial by itself is not enough to remove him from the scope of federal regulation where, as here, his contribution, taken together with that of many others similarly situated, is far

from trivial." Wickard v. Filburn, supra, 317 U.S. at 125, 127–128, 63 S.Ct. at 89–90.

In addition to the above and in connection with a discussion of the Commerce Clause, the Court felt that the "conflicts of economic interest between the regulated and those who advantage by it are wisely left under our system to resolution by the Congress under its more flexible and responsible legislative process. Such conflicts rarely lend themselves to judicial determination." Wickard v. Filburn, supra, 317 U.S. at 129, 63 S.Ct. at 91.

In connection with plaintiff's objection on the ground of violation of the due process clause, the Court rejected the argument that the Fifth Amendment requires that he be free from penalty for planting wheat and disposing of his crop as he sees fit. In doing so the Court reviewed the provisions of the Act: those which made exceptions in favor of small producers, that is, those farmers under a 15 acre allotment who were not bound by the marketing quotas; and those provisions which allowed the farmer producing in excess to avoid penalties by storing the excess and using it in future years when production is not as high. The Court pointed to the net effect of the Act, which was to guarantee to the farmer who planted within his allotment, a minimum return much above what his wheat would have brought if sold on a world market basis.

The Court stated: "We can hardly find a denial of due process in these circumstances, particularly since it is even doubtful that appellee's burdens under the program outweigh his benefits. It is hardly lack of due process for the Government to regulate that which it subsidizes." Wickard v. Filburn, supra, 317 U.S. at 131, 63 S.Ct. at 92.

In conclusion, the Court said: "That appellee is the worse off for the aggregate of this legislation does not appear; it only appears that, if he could get all that the Government gives and do nothing that the Government asks, he would be better off than this law allows. To deny him this is not to deny him due process of law." Wickard v. Filburn, supra, 317 U.S. at 133, 63 S.Ct. at 93.

This was the opinion of the Court and it was a unanimous opinion.

The Court has considered the arguments made today, and the cases cited by both sides, and the Court does not feel that there is a substantial question of constitutional law involved in this case. Therefore the motion of the plaintiffs to convene a three-judge court is denied, and the motion to dismiss filed by the Government will be granted.

Counsel for the Government will prepare an appropriate order.