**LAFAYETTE RADIO ELECTRONICS CORPORATION, Petitioner,**

v.

**The UNITED STATES of America and the Federal Communications Commission, Respondents.**

**No. 499, Docket 29678.**

United States Court of Appeals Second Circuit.

Argued April 26, 1965.

Decided April 26, 1965.

Paul Dobin, Washington, D. C. (Borden & Ball, New York City, Leonard H. Marks, Washington, D. C., and Joel H. Levy, of counsel), for petitioner.

John H. Conlin, Washington, D. C. (William H. Orrick, Jr., Ass't. Atty. Gen., Robert Hummel, Atty., Dept. of Justice; Henry Geller, Gen. Counsel, Howard Jay Braun, Counsel, Federal Communications Commission), for respondents.

Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge:

Our motion calendar of April 26, 1965, contained applications by Lafayette Radio Electronics Corporation, under 5 U.S.C. § 1039, for a temporary restraining order and an interlocutory injunc-

tion against a new regulation of the Federal Communications Commission (FCC), to become effective that day, which, by appropriate petition, 5 U.S.C. § 1034, Lafayette asked us to review. Since the ·petitioner's papers and the response of the United States and the FCC, which we had previously examined, fully covered the merits, we set the petition for argument later that day. At the close of the argument we announced our denial of the petition and the consequent mooting of the applications for relief pending decision.

The controversy concerns a new FCC regulation, initially released July 29, 1964 for effectiveness November 1, 1964, 29 F.R. 11099, and adhered to on reconsideration in an opinion and order released March 1, 1965, 30 F.R. 2706. The regulation complained of, § 95.83(a)(1), which was issued as the result· of a rule-making proceeding announced in 1962, 27 F.R. 11500, provides:

§ *95.83 Prohibited uses.*

(a) A Citizens radio station shall not be used:

(1) For engaging in radio communications as a hobby or diversion, i. e., operating the radio station as an activity in and of itself.

The 1965 opinion included a dozen "typical, but not all inclusive, examples of the types of communications evidencing" the kind of use prohibited under the rule. Read in the light of these examples, the rule proscribes transmission merely for the pleasure of using the equipment or discussing it. Lafayette, which holds a citizens radio station license and manu-

factures equipment used by licensees,[1] challenges the rule as violating the First Amendment and § 326 of the Federal Communications Act, 47 U.S.C. § 326,[2] and as unconstitutionally vague, particularly in the light of its effect on expression.

The Citizens Radio Service is one of some forty FCC regulated Safety and Special Radio Services, in which there are nearly 5,000,000 transmitters and over 1,400,000 licensees. These services differ from broadcast and common carrier services in that the number of users is so great that frequencies must be shared. The Citizens Radio Service was established in 1945, by the allocation of the 460–470 mc/s bands, to provide for personal and business uses of private citizens who did not come within any of the other defined services, 10 F.R. 901.[3] Examples are communication between business establishments and delivery vehicles, use in vehicles in and around large plants, construction projects, farms and ranches, and use by sportsmen and explorers for messages to and from camps. From the outset the FCC has indicated that the service was to be used for serious communications and did not encompass operation of a station for the enjoyment of doing so, a function already provided for in the Amateur Radio Service, where, however, licensing requirements are more severe. Enforcement problems began to be important with the authorization of a new class of service, known as Class D, operating with radiotelephone emissions at low wattage on certain frequencies in the 27 mc band. In 1960, by which time some 50,000 Class

---

1. Lafayette's status as a licensee makes it a "party aggrieved" by the FCC's order, 5 U.S.C. § 1034, United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956), and we need not consider whether its interest as a manufacturer would alone suffice— even though it is quite apparent that in fact the latter interest has prompted Lafayette's challenge. Cf. Reade v. Ewing, 205 F.2d 630 (2 Cir. 1953); 3 Davis, Administrative Law Treatise, §§ 22.01–06, 22.12 (1958).

2. This provides:
   "Nothing in this chapter shall be understood or construed to give the Commission the power of censorship over the radio communications or signals transmitted by any radio station, and no regulation or condition shall be promulgated or fixed by the Commission which shall interfere with the right of free speech by means of radio communication."

3. Examples are the Aviation, Marine, Railroad, Police, Fire, and Automobile Emergency Services.

D licenses had been granted, the FCC adopted amendments to its rules, spelling out the types of permitted operations and stating in comment that hobby type communications were not allowed, 25 F.R. 1408. Just prior to the now challenged amendment, the relevant rule read as follows:

§ *95.81 Permissible communications.*

(a) The units of any Class A, Class B, or Class D station licensed in the Citizens Radio Service are authorized primarily to communicate with other units of the same station; secondarily, units of all Class A, Class B, and Class D stations are authorized to intercommunicate with units of other stations in the Citizens Radio Service only when necessary for the exchange of substantive messages related to the business or personal activities of the individuals concerned. Communications with stations licensed or operated under the provisions of other parts of this chapter, or with United States Government or foreign stations, is prohibited except for communications relating to civil defense activities in accordance with the provisions of § 95.121.

■ Section 326 of the Communications Act must be read together with § 303, 47 U.S.C. § 303, which authorizes the FCC to "classify radio stations" and to "prescribe the nature of the service to be rendered by each class of licensed stations and each station within any class." Petitioner does not question the power of the FCC to restrict communications, say within the Aviation Radio Service, to those having to do with aviation; its argument is that in a service available to all citizens for business and personal activities generally, citizens must be allowed to say whatever they please, save for such few restrictions as the First Amendment permits. But this ignores that "Freedom of utterance is abridged to many who wish to use the limited facilities of radio. Unlike other modes of expression, radio inherently is not available to all." National Broad-casting Co. v. United States, 319 U.S. 190, 226, 63 S.Ct. 997, 1014, 87 L.Ed. 1344 (1943). There are now 700,000 Class D licensees utilizing the 23 available frequencies, and several thousand are added each month. Here is truly a situation where if everybody could say anything, many could say nothing. The very absence of restrictions on the number of users may demand more restrictions on the use. The Commission was thus empowered in the public interest to prohibit communications over the limited available frequencies which serve no purpose other than the sheer pleasure of emitting them and receiving a response or of discussing the equipment itself. There is likewise no force in the argument that, while banning discussion of radio equipment, the rule does not outlaw communications of no more social value, e. g., between licensees sharing a common interest in a sport, save when the station is operated "as an activity in and of itself." Experience had demonstrated that chit-chat about equipment was a characteristic of hobby type operation and was absorbing an undue amount of the time available on the limited frequencies of the Citizens Radio Service; prohibition of other uses of minimal utility may permissibly await demonstration of the need. Cf. Williamson v. Lee Optical Co., 348 U.S. 483, 488–489, 75 S.Ct. 461, 99 L.Ed. 563 (1955). These considerations also dispose of the claim under the First Amendment.

■ We likewise see no sufficient force in the claim of unconstitutional vagueness. The Commission's endeavor was to provide a more specific substitute for the provision in former § 95.81, that interstation communication is permitted "only when necessary for the exchange of substantive messages related to the business or personal activities of the individuals concerned." See Warren G. Holleman, 34 F.C.C. 121, 126–127 (1963); Vincent R. Banville, Sr., 35 F.C.C. 604 (1963). The FCC is not to be faulted simply because ingenuity can imagine borderline cases where a conscientious licensee might have fair doubt whether his

communications were banned or not. In that event, he need only inquire, 5 U.S.C. § 1004(d), 47 C.F.R. § 1.2 (1964); and counsel for the Commission have assured us, as we would have supposed in any event, that, except in most flagrant cases, the Commission does not invoke the sanctions of revocation or fines, 47 U.S.C. §§ 312, 510, save after giving the licensee warning and opportunity to mend his ways. We have recently indicated, with respect to another agency, our refusal to be persuaded "as to the genuineness of fears that a great agency of government like the Commission will behave in any such literalistic and arbitrary fashion as petitioners suggest," Heavenly Creations, Inc. v. FTC, 339 F.2d 7, 9 (2 Cir. 1964), cert. denied, 85 S.Ct. 1089 (1965).

The petition for review is denied.