Madalyn Murray O'HAIR et al.,
Plaintiffs,

v.

UNITED STATES of America et al.,
Defendants.

Civ. A. No. 2162–67.

United States District Court

District of Columbia.

March 15, 1968.

**816**

James H. Anderson, Jr., Baltimore, Md., Chester C. Shore, Washington, D. C., for plaintiffs.

David G. Bress, U. S. Atty., Joseph M. Hannon, Gilbert Zimmerman, Asst. U. S. Attys., Washington, D. C., for defendants.

## OPINION

McGARRAGHY, Senior District Judge.

The plaintiffs have prayed that this court convene a three-judge District Court according to the statutory provisions of 28 U.S.C. § 2282 and § 2284. The plaintiffs seek a declaratory judgment as to the Communications Act of 1934, as amended, now codified in Title 47 of the United States Code. They specifically allege that Section 47 U.S.C. § 301 which prohibits the use of airwaves for broadcasting purposes except with specific authorization by the Federal Communications Commission effectively restricts and abridges the plaintiffs' freedom of speech and is thereby repugnant to the First Amendment of the Constitution. They further contend that the "Fairness Doctrine" promulgated by the Commission, relating to the availability of air time for controversial issues of public importance, allows the systematic denial of use of the airwaves and it is, therefore, contrary to the precepts of the First Amendment. The plaintiffs also seek injunctive relief from any and all acts of the defendants which may restrict and abridge their freedom of speech.

It must be stated at this point that the Court is proceeding without the benefit of oral hearing on the issue, since the plaintiffs have elected to proceed solely on their pleadings. The memorandum filed by the plaintiffs in answer to the defendants' motion to dismiss has treated the issues presented very superficially and without any analysis or presentation of the applicable law.

A motion to dismiss under the Federal Rules is a precise device which tests the legal sufficiency of the complaint and the plaintiffs' material allegations of fact posited in their pleadings must be accepted as admitted.[1] The motion challenges not the substance of the material allegations, but essentially states that even if the facts as pleaded are true, no justiciable cause of action is made out. Therefore, prior to discussing the legal principles involved, it will be necessary to first delineate the factual contentions made by the plaintiffs.

1. L. B. Wilson, Inc. v. F. C. C., 83 U.S. App.D.C. 176, 170 F.2d 793 (1949), Travel Magazine, Inc v. Travel Digest, Inc., 191 F.Supp. 830 (S.D.N.Y.1961).

The complaint states that the plaintiffs are the founder and directors of the Society of Separationists, an unincorporated association. They bring this action in their individual and in their representative capacity. The Society professes to adhere to the atheistic philosophy. In promulgating this view, they seek "to agitate for complete separation of church and state and to stimulate and promote freedom of thought and inquiry concerning religious beliefs, * * * and to collect and disseminate information on all religions * * *, and promote a more thorough understanding of them, * * * to educate the public as to why churches should be taxed, and to promote [the] atheistic philosophy." In order to disseminate this philosophy among the general public they have used the mails, personal contact and periodic publications; however, to accomplish their purpose effectively, the plaintiffs are of the opinion that the airwaves are the best means of communication.

Prior to the filing of the instant suit, the plaintiff, Mrs. Madalyn Murray O'Hair, nee Madalyn Murray, sought air time from various licensees in Honolulu, Hawaii. The record does not indicate whether the request was for free or paid time. She premised this request on the fact that other religious programs were being broadcast by the various licensees and that she should, therefore, be allowed the time to present the opposing view. This request was also predicated upon the basis that the viewpoint which was being promulgated by the plaintiff was a controversial issue of public importance and she should be afforded a reasonable opportunity to present this contrasting viewpoint. The record fails to indicate the responses received from the licensees; however, it is reasonable to infer that the plaintiff's requests were rejected[2] since the plaintiff, Mrs. Murray, subsequently filed a complaint with

the F.C.C. The members of the Commission, acting upon the information submitted both by the plaintiff and the licensees concluded that the licensees had acted reasonably and in good faith within the dictates of the "Fairness Doctrine". The Commission presented its findings to the plaintiff in a declaratory ruling dated June 2, 1965, which was accompanied by amplifying concurring opinions by Chairman Henry and Commissioner Cox and a dissenting opinion by Commissioner Lovinger.

The Government brief indicates that the plaintiff, now Mrs. Madalyn Murray O'Hair, did not petition for a court review of the Commission ruling under the then governing judicial review provisions of 5 U.S.C. § 1031 et seq. The claim now presented by the plaintiffs, albeit directed to different parties, and premised on other occurrences, raises essentially the equivalent issue which was previously brought before the Commission.

The plaintiffs here, however, have shifted their mode of attack, whereas in the previous complaint their challenge was directed against the "Fairness Doctrine", here the attack has zeroed in on the constitutionality of the Communications Act of 1934, as amended. The "Fairness Doctrine" is attacked only on a derivative basis, since it is a product of that Congressional enactment. Due to the constitutional grounds which are raised, the plaintiffs contend that this Court sitting as a sole district judge must grant their request to have a three-judge District Court panel called to pass upon the constitutionality of the Communications Act. The complaint, therefore, launches a constitutional attack upon a federal statute, and prays that its operation be enjoined.

In order to obtain the proper perspective and focus upon the primary

2. The concurring opinion of Chairman E. William Henry joined by Commissioner Kenneth A. Cox notes that three licensees allowed Mrs. Murray to broadcast over their facilities without charge while one licensee offered her time at the same rate as it charged for religious broadcasts. (Page 2 of Opinion by Commissioners Henry and Cox, accompanying the FCC letter to Mrs. Murray of June 2, 1965.)

issue to be decided by this Court, it is advisable to consider the function and duties of the sole District Court Judge when a request for the empaneling of a three-judge court is presented to him. The procedure to be followed by the three-judge panel is clearly defined by statutory authority.[3] However, the duties of the sole judge, who is making the inquiry as to whether or not to request of the Chief Judge of the Circuit that he empanel a three-judge court, must be gleaned from prior decisions. Like many other areas of our common law, the essential elements have not been clearly defined and the metes and bounds which delineate the procedure to be followed remain evanescent in character and in substance.

Like any other action which is brought before the Court for adjudication, before any action can be taken on the issue presented, it must determine of first instance whether or not it has jurisdiction. The presence of a request for a three-judge court does not relieve the Court of its responsibility or impair its power to dismiss a complaint when the Court deems that it lacks jurisdiction.[4] The single judge District Court must, therefore, determine its jurisdiction at the threshold. The first duty of the sole judge is to pass on the sufficiency of the complaint specifically as to whether or not a justiciable controversy is presented over which he has adjudicatory powers, and if he determines that the Court lacks jurisdiction, he must dismiss the suit.

If the jurisdictional issue is decided in favor of the plaintiffs, the sole District Court Judge is confronted with the real dilemma of the situation. The dilemma arises when he passes on the substantiality of the constitutional question involved. A single District Court Judge may dismiss a complaint which seeks an injunction restraining the enforcement, operation or execution of any Act of Congress as being unconstitutional, if he decides that a substantial constitutional issue is not raised by the complaint.[5] The second duty of the sole District Court Judge is, therefore, to determine the substantiality of the constitutional claim. The term substantial, like any other relative assessment, is one of evanescent character and turns on a matter of degree. This subjective analysis offers no fixed scale against which the substantial characteristic of the constitutional claim can be measured.

The plaintiffs have based their argument solely on the Idlewild Bon Voyage Liquor Corp. v. Epstein[6] decision recently handed down by the Supreme Court. Their argument is grounded on the premise that subsequent to a determination of jurisdiction based on repugnance of a federal statute to the U.S. Constitution, the sole judge cannot determine the substantiality of the constitutional attack. They argue that this determination should be made in the first instance by a three-judge District Court. The gist of their argument boils down to the fact that once the sole District Judge has determined that the District Court has jurisdiction over the issue, he cannot dismiss the complaint on

3. 28 U.S.C. § 2284.

4. Lion Mfg. Co. v. Kennedy, 117 U.S.App. D.C. 367, 330 F.2d 833 (1964) ; Eastern States Petroleum Corp. v. Rogers, 108 U.S.App.D.C. 63, 280 F.2d 611 (1960), cert. denied 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960) ; see also Jacobs v. Tawes, 250 F.2d 611 (4th Cir. 1957).

5. Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189 (1939), California Water Service Co. v. City of

Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1933), Brotherhood, etc. v. Certain Carriers, etc., 118 U.S.App.D.C. 100, 331 F.2d 1020, cert. denied 377 U.S. 918, 84 S.Ct. 1181, 12 L.Ed.2d 187 (1964), Lion Mfg. Corp. v. Kennedy, supra, Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1964), Schneider v. Rusk, 372 U.S. 224, 83 S.Ct. 621, 9 L. Ed.2d 695 (1962).

6. 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

the merits no matter how frivolous the claim of unconstitutionality.[7]

The plaintiffs' position is not supported by the cases and a close reading of the *Idlewild* decision indicates that the single judge should pass on the substantiality of the constitutional question. In the *Idlewild* case, the Court stated:

> "When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is *substantial,* whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." (Emphasis added.)[8]

This principle was recently reinterated in Lion Mfg. Corp. v. Kennedy[9] where our Court of Appeals specifically held it proper for a single judge to dismiss the complaint without convening a three-judge court.[10] If the claim is improperly dismissed by the single judge, his action is reviewable by the Circuit Court of Appeals.[11]

■ Having outlined these basic principles, the Court will proceed to a determination of the issues presented. As previously noted, the plaintiffs have presented a direct challenge to the constitutionality of the Communications Act. They premise this attack on the First Amendment of the Constitution, essentially stating that since Congressional legislation establishes a federal agency to allocate broadcasting frequencies and since all persons cannot avail themselves of the facilities, their freedom of speech has been curtailed, ergo, the Act is unconstitutional. Except where Congress has specifically enacted provisions whereby jurisdiction of a justiciable controversy is laid to a Circuit Court of Appeals, a constitutional attack of a federal statute is properly brought before a District Court by the declaratory judgment vehicle, and the District Court has jurisdiction to hear the case.

■■ Since the complaint presently before this Court raises the constitutionality of an Act of Congress, incipient jurisdiction does lie before the District Court. However, in order for this Court to have full jurisdiction of the subject matter of this complaint, it must also present facts showing an immediate, specific, actual controversy between the plaintiffs and the defendants, since this is a constitutional prerequisite for the exercise of the judicial function.[12] In other words, the complaint must present a justiciable issue under the Declaratory Judgment Act. The Supreme Court has recently noted that if "the impact of the regulations upon the petitioners is sufficiently direct and immediate" it renders the issue appropriate for judicial re-

---

7. Some commentators agree with the plaintiffs in this regard. See, Note, The Three Judge District Court: Scope and Procedure Under Section 2281, 77 Harv.L. Rev. 299, 317 (1963).

8. 370 U.S. at 715, 82 S.Ct. at 1296.

9. 117 U.S.App.D.C. 367, 330 F.2d 833 (1964).

10. See also Eastern States Petroleum Corp. v. Rogers, supra, White v. Gates, 102 App.D.C. 346, 253 F.2d 868 (1958), cert. denied 356 U.S. 973, 78 S.Ct. 1136, 2 L. Ed.2d 1147; Wicks v. Southern Pac. Co., 231 F.2d 130 (9th Cir. 1956), cert. denied, sub nom. Wicks v. Brotherhood of Maintenance of Way Emp., 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471 (1956),

McReynolds v. Christenberry, 233 F.Supp. 143 (S.D.N.Y.1964), cert. denied 379 U.S. 972, 85 S.Ct. 657, 13 L.Ed.2d 564 (1965).

11. See Idlewild Bon Voyage Liquor Corp. v. Epstein, supra, Jacobs v. Tawes, supra.

12. International Longshoremen's and Warehousemen's Union Local 37 v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954), Public Service Commission of Utah v. Wycoff, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), Eccles v. Peoles Bank of Lakewood Village, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948), United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

820

view.[13] A liberal interpretation of this holding can be used to posit proper justiciability for the issue before this Court. The plaintiffs here claim that the defendants are authorized to allocate broadcasting frequencies and that this activity transgresses the limitations imposed upon the Congress by the U.S. Constitution, thereby infringing their rights under the First Amendment. This Court, therefore, finds that it has jurisdiction over the issue presented by the plaintiffs and it will now proceed to determine the substantiality of the constitutional issue.

 The Court must satisfy itself that the challenge is substantial, since the existence of a substantial constitutional challenge to an Act of Congress, as previously noted, is a primary prerequisite for convening a three-judge court.[14] A challenge on the constitutionality of an Act of Congress lacks substantiality if prior decisions foreclose the subject or if the question raised obviously is without merit.[15] The plaintiffs attack the constitutionality of the Communications Act of 1934, as amended, codified in Title 47 of the U.S. Code. They attack the Act on the basis that it is repugnant to the First Amendment right of freedom of speech. They argue that since every person is prohibited from using the airwaves for broadcasting purposes, except with specific authorization by the Federal Communications Commission, this statutory limitation abridges their right of free speech, by effectively curtailing their area of general communication.

This particular issue was edified by a Supreme Court decision written by Mr. Justice Frankfurter in 1943. In the National Broadcasting Co. v. United States [16] decision, Mr. Justice Frankfurter answered the issue being presently raised by the plaintiffs. A paragraph in that opinion is worth noting, specifically in answer to the appellants' argument based on the First Amendment. The Court stated:

"We come, finally, to an appeal to the First Amendment. The Regulations, even if valid in all other respects, must fall because they abridge, say the appellants, their right of free speech. If that be so, it would follow that every person whose application for a license to operate a station is denied by the Commission is thereby denied his constitutional right of free speech. Freedom of utterance is abridged to many who wish to use the limited facilities of radio. Unlike other modes of expression, radio inherently is not available to all. That is its unique characteristic, and that is why, unlike other modes of expression, it is subject to governmental regulation. Because it cannot be used by all, some who wish to use it must be denied." [17]

 It could be argued that the National Broadcasting decision can be distinguished over the issue in this case since there the appellants were challenging the right of the Commission to refuse a license to persons who engaged in specific network practices. However, the gist of the plaintiffs' argument is indistinguishable from the argument proffered in the National Broadcasting case. The Court in National Broadcasting essentially stated that the uniqueness of radio broadcasting due to the technical

13. Abbott Laboratories v. Gardner, 387 U.S. at 152, 87 S.Ct. at 1517, see also Baker, Watts & Co. v. Saxon, 261 F. Supp. 247 (D.C.D.C.1966), ICI v. Camp, 274 F.Supp. 624 (D.C.D.C.1967).

14. See cases cited supra n. 5.

15. Bailey v. Patterson, 369 U.S. 31, 82 S. Ct. 549, 7 L.Ed.2d 512 (1962), California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1933), Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933), Flamm v. Hughes, 329 F.2d 378 (2nd Cir. 1964), Weir v. United States, 310 F.2d 149 (8th Cir. 1962), White v. Gates, 102 U.S.App. D.C. 346, 253 F.2d 868 (1958), cert. denied 356 U.S. 973, 78 S.Ct. 1136, 2 L. Ed.2d 1147; Landsberger v. Freeman, 217 F.Supp. 138 (D.C.D.C.1963).

16. 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344.

17. 319 U.S. at 226, 63 S.Ct. at 1014.

limitations imposed by the inherent physical properties of broadcasting frequencies, gave the federal government the right to establish a systematic method of allocating the frequencies available; therefore, it was a proper exercise of its power over commerce. The Court in this regard noted with specificity that:

"The right of free speech does not include, however, the right to use the facilities of radio without a license. The licensing system established by Congress in the Communications Act of 1934 was a proper exercise of its power over commerce." [18]

The *National Broadcasting* case has been cited with approval in several recent Court of Appeals decisions, inferring that the present controversy raised by the plaintiffs has been foreclosed and that the principle enunciated in the *National Broadcasting* case has been accepted.[19]

It is also noteworthy that a previous complaint filed in this Court requesting a three-judge court to hear the exact issue being raised in the instant case was denied by the Chief Judge of this Circuit.[20]

If the complaint were to be construed as a request to pass on the constitutionality of the "Fairness Doctrine", this Court would lack jurisdiction to hear the case, since the proper tribunal to hear that issue is the Court of Appeals, after the complainants had exhausted their administrative remedies.

For the reasons stated above, the request for a three-judge court is denied, and the defendants' motion to dismiss is granted.

Counsel for the Government will submit an Order consistent herewith.

18. 319 U.S. at 227, 63 S.Ct. at 1014.

19. Red Lion Broadcasting Co. v. FCC, 127 U.S.App.D.C. 129, 381 F.2d 908 (D. C.Cir. 1967), cert. granted Dec. 5, 1967, 389 U.S. 968, 88 S.Ct. 470, 19 L.Ed.2d 458; Lafayette Radio Electronics Corp. v. United States, 345 F.2d 278 (2nd Cir. 1965), Henry v. FCC, 112 U.S.App.D.C. 257, 302 F.2d 191, cert. denied 371 U.S. 821, 83 S.Ct. 37, 9 L.Ed.2d 60 (1962).

20. See the denial of a request for a three-judge court in Red Lion Broadcasting Co., Inc. v. FCC, C.A. 2331–65 handed down on Dec. 2, 1965. There, Chief Judge Bazelon noted that: " * * * were the complaint to be construed as requesting injunctive relief against the Communications Act on Constitutional grounds the issue would be frivolous,"—citing the National Broadcasting Co. decision.