Don B. EDISON, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 342–87C.

United States Claims Court.

Dec. 18, 1987.

Penrose Lucas Albright, Arlington, Va., for plaintiffs.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

ORDER

MOODY R. TIDWELL, III, Judge:

This matter came before the court upon defendant's motion to dismiss for failure of

the plaintiffs to state a claim upon which relief can be granted. Defendant argued that under the applicable laws plaintiffs can assert no set of facts that would entitle them to relief under the Tucker Act jurisdiction of this court. Plaintiffs opposed.

## FACTS

Plaintiffs, Lieutenant Colonel Edison, Major Slyder, Captain Polski and Captain Gamboa, were enlisted members of Army Reserve components in the early 1950s. They were subsequently appointed between January 1, 1953 and June 25, 1956, to the United States Naval Academy as midshipmen. When appointed to the Naval Academy, each plaintiff was discharged from his Army Reserve component. After graduation from the Naval Academy, some plaintiffs served and others continue to serve on active duty as officers in the various armed forces of the United States. Navy and Air Force Reservists of the same era were also discharged upon appointment to the Naval Academy as midshipmen. The Board for Correction of Naval Records and the Air Force Board for Correction of Military Records later determined that some of the discharges were incorrect and changed the Navy and Air Force reservists' records, 10 U.S.C. § 1522 (1982), to reflect active service as reservists while midshipmen. Plaintiffs petitioned the Army Board for Correction of Military Records for a similar change of their records but were not afforded relief. Plaintiffs' complaint asserted that 10 U.S.C. § 277 (1982) mandates that all armed forces reservists be treated without discrimination under the law. Under section 277, plaintiffs asserted that their Army records should, contrary to the decision of the Army Board for Correction of Military Records, and without discrimination amongst reservists, be changed to bring them into accord with Navy and Air Force reservists' records.

Defendant asserted in its motion to dismiss that Acts of Congress, DOD Directives and Army Regulations mandated that plaintiffs be discharged upon their appointment to the Academy. This court is, therefore, required to examine the applicable law and determine whether there is a possibility of success for plaintiffs' case in order to establish whether plaintiffs' complaint can withstand defendant's motion to dismiss.

## DISCUSSION

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Before a complaint may be dismissed for failure to state a claim, the court must determine that plaintiff's possible allegations of fact do not support relief on any possible legal theory set forth by plaintiff. *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1081 (D.C. Cir.1984). The rule is a precise device which tests the legal sufficiency of the complaint while accepting all of plaintiffs' material allegations of fact posited in pleadings as admitted and all facts construed in favor of plaintiff. *General Guaranty Ins. Co. v. Parkerson*, 369 F.2d 821, 825 (5th Cir.1966); *CBS v. Springboard Int'l Records*, 429 F.Supp. 563, 567 (S.D.N.Y.1976); *O'Hair v. United States*, 281 F.Supp. 815, 816 (D.D.C.1968). The court has the obligation to scrutinize the complaint and to let it stand if plaintiff might recover under any set of facts which could be proved in support of their claim.

In its motion to dismiss, defendant asserted that plaintiffs have failed to allege that their discharges from the Army Reserve violated a statute or regulation that would give rise to a cognizable claim under the Tucker Act. Defendant maintained that the Department of Defense and the regulations of the appropriate services governed discharges from reserve components at the time in question. 50 U.S.C. § 991 (1952). In conjunction with section 991, defendant relied upon DOD Directive 1300.4 (May 3, 1954) which mandated the discharge of all reservists being appointed as midshipmen "in order to avoid dual status of personnel attending service academies." Defendant also relied upon Army Reserve Service Regulation No. 140–177–1

(November 24, 1952), effective January 1, 1953, to establish that the Army properly and lawfully discharged plaintiffs. Subparagraph 3.b.(5) of that regulation declares that "enlisted members of the Army Reserve will be discharged ... [b]y direction of area commanders or such officer or officers as may be designated by them for that purpose ... [u]pon appointment to the United States Military, Naval, or Coast Guard Academy." In addition, defendant cited paragraph three of Army Regulation No. 615–365 (October 13, 1952) which stated that "the Secretary of the Army has delegated to the commanders ... the authority to order enlisted personnel discharged or released from the active military service for the convenience of the Government ... to accept appointment and entrance in any of the service academies." Defendant argued that these provisions authorized or mandated the discharge of the plaintiffs from the Army Reserve, and that plaintiffs can state no claim under the Tucker Act upon which relief may be granted.

Plaintiffs' response did not contest that the provisions cited by defendant were in existence or that they applied on their face to plaintiffs in this action. Instead, plaintiffs argued that the ABCMR's denials of plaintiffs' application for correction of records violated 10 U.S.C. § 277 (1982).

Although substantive statutes and regulations are not the basis for plaintiffs' argument for the correction of their military records, plaintiffs stated that under 10 U.S.C. § 277 (1982), "[l]aws applying to both Regulars and Reserves shall be administered without discrimination—(1) among Regulars; (2) among Reserves; and (3) between Regulars and Reservists." Plaintiffs argued that if exceptions to the general rule were available to Air Force and Navy Reservists similar rights to dual status should be afforded Army Reservists. In support of this position, plaintiffs cited decision *In re Brown*, 41 Comp.Gen. 578 (1962), in which the Comptroller General of the United States concluded that a Navy reservist of the same era as plaintiffs was permitted, concurrent with his status as a midshipman at the Naval Academy, to remain enlisted in the Naval Reserve enjoying continually the emoluments of reserve service. Plaintiffs argued that there may have been a window of time from January 1, 1953 to June 25, 1956, in which reservists were permitted to accept an appointment with a service academy without forfeiting concurrent or dual status as a reservist.

It is undisputed that

[t]he period of service under an enlistment or period of obligated service, [such as the reserves,] while also served ... as a midshipman at the United States Naval Academy ... under an appointment accepted after June 25, 1956, may not be counted in computing, for any purpose, the length of service of an officer of an armed force.

10 U.S.C. § 971 (1982). This statute closed the door to any claimed rights to dual service after June 25, 1956, but left the implication that there may have been times when dual status had been properly permitted. Indeed, the Navy may have recognized some period of time between January 1, 1953, and June 25, 1956, in which it permitted some Navy reservists to maintain dual status. *In re Brown*, 41 Comp. Gen. 578 (1962); *see also* 32 Comp.Gen. 548 (1953). Plaintiffs argued that if the DOD directive of May 3, 1954, was mandatory upon all armed forces, as reflected in the prohibitions under the Army regulations, plaintiffs should not be treated in a discriminatory manner under 10 U.S.C. § 277 (1982), and should, as other reservists have been granted, have their records corrected to reflect dual status during their years at the Naval Academy.

■ The question before this court is whether there is a legal theory upon which plaintiffs could allege a claim under the Tucker Act. Without passing on the merits of the case, this court concludes that there is a possible legal theory of discrimination under 10 U.S.C. § 277 (1982), upon which plaintiffs may have a meritorious claim if plaintiffs can establish that 10 U.S.C. § 277 has been violated by the ABCMR. This court agrees with defendant's statement in footnote 2 of its motion to dismiss: "[Plaintiffs] may be entitled to service

credit for time they concurrently held another military status while they attended a service academy." Plaintiffs have asserted the necessary facts sufficient to proceed under a possible violation of 10 U.S.C. § 277, which would entitle them to monetary claims against the United States if their claims are recognized.

## CONCLUSION

Plaintiffs' complaint is legally sufficient to avoid a motion to dismiss for failure to state a claim. Defendant's motion is denied and the parties are ordered to continue their activities under the rules of the court.

IT IS SO ORDERED.