**David CARLINER et al., Plaintiffs,**

v.

**BOARD OF COMMISSIONERS OF the DISTRICT OF COLUMBIA et al., Defendants.**

**Civ. A. No. 2981–66.**

United States District Court
District of Columbia.

March 20, 1967.

David Carliner, Washington, D. C., for plaintiffs.

Charles T. Duncan, Corporation Counsel, John A. Earnest, Asst. Corporation Counsel, John H. Suda, Asst. Corporation Counsel, Washington, D. C., for defendants.

## OPINION

WILLIAM B. JONES, District Judge.

In this action plaintiffs have requested the convening of a three-judge court pursuant to the provisions of 28 U.S.C. §§ 2282 and 2284, while defendants have moved to dismiss the complaint. The Court has had the benefit of extensive briefs and oral argument by counsel. Plaintiffs' request is denied and defendants' motion is granted.

In the complaint it is alleged that of the nine plaintiffs, five are white and four are Negroes. All plaintiffs assert that they were born in the District of Columbia and that they are residents, adult citizens, and qualified voters in that District. They allege that this is a class action brought on behalf of themselves and of other similarly situated citizens of the District of Columbia. This action is brought against the Board of Commissioners of the District of Columbia and the three persons who at the time the complaint was filed were serving pursuant to appointment as the Commissioners constituting such Board.[1]

The plaintiffs seek a judgment declaring that certain statutes which vest executive and legislative power over the Government of the District of Columbia in the defendants are in conflict with the Ninth, Tenth, and Fifteenth Amendments to the Constitution, and for an injunction to restrain the enforcement of certain statutes which purport to authorize the defendants to exercise specified executive and legislative powers.

The complaint asserts two claims or, as denominated in the complaint, two causes of action. In their first claim or cause of action, plaintiffs allege that the power vested in Congress by Article I, Section 8, Clause 17 of the Constitution "to exercise exclusive legislation" over the District of Columbia is expressly limited by the subsequently adopted Ninth and Tenth Amendments to the Constitution so as not to deny or to disparage the rights retained by the people and so as to reserve to the people powers not delegated to the United States by the Constitution. It is further asserted in the first claim of the complaint that the people, who inhabited the territories ceded to the Federal Government by the State of Maryland and the Commonwealth of Virginia for the establishment of the seat of the Government of the United States, maintained municipal and county governments with the right to elect the officers of such governments. This right of suffrage in the affairs of local government, the complaint asserts, existed from 1790 when Congress accepted the ceded territory until the enactment of the Temporary Organic Act of 1874 (Act of June 20, 1874, 18 Stat. 116).[2] That Act and the Organic Act of the District of Columbia of 1878 (Act of June 11, 1878, 20 Stat. 102) plaintiffs assert, abolished the previously existing elective government for the District of Columbia and in its stead vested certain legislative and executive powers in three Commissioners who are selected by the President of the United States and who, to the exclusion of any elective representatives of the citizens of the District

---

1. Since the filing of the complaint defendant Charles M. Duke, an officer of the Corps of Engineers, United States Army, has been assigned to other duties and is no longer a member of the defendant Board of Commissioners. To fill the office vacated by General Duke, the President of the United States has appointed Brig. Gen. Robert E. Mathe, also an officer of the Corps of Engineers. While there has been no substitution of parties in this action, none need be made in light of this Court's disposition of this case.

2. Between 1790 and 1874, Congress enacted legislation incorporating the City of Washington, amending the charter of the Town of Georgetown, providing a government for the District of Columbia as well as related statutes, all of which conferred or continued the right of local suffrage. In 1846 the United States retroceded to the Commonwealth of Virginia the County of Alexandria.

of Columbia, are the officers of the municipal corporation of the District of Columbia.

The plaintiffs claim that the 1878 Organic Act conflicts with the Ninth Amendment in that the exclusive legislative power over the District of Columbia as conferred by Article 1, Section 8 of the Constitution has been construed to deny the retained right of suffrage by the people of the District to elect their municipal officers. Also, assert the plaintiffs, the 1878 Organic Act conflicts with the Tenth Amendment in that the power to select their municipal officers is reserved to the people of the District of Columbia.

By being deprived of the opportunity to elect their municipal officers, plaintiffs claim they were and are suffering irreparable injury and damage due to the defendants exercising certain police, fiscal, and other powers conferred upon them by Congress without being accountable to the people of the District of Columbia.

In their second claim or cause of action plaintiffs allege that the 1878 Organic Act of the District of Columbia as applied to the four Negro plaintiffs is in conflict with the Fifteenth Amendment to the Constitution.[3] It is alleged that as a result of the enactment in 1867 of the Act to Regulate the Elective Franchise in the District of Columbia (Act of January 8, 1867, 14 Stat. 375) Negro citizens voted in the succeeding elections for various municipal officers. And it is claimed that the exclusive legislative power over the District vested in Congress was limited by the adoption of the Fifteenth Amendment in 1870 which provided that the right of citizens to vote shall not be denied or abridged on account of race, color, or previous condition of servitude. But notwithstanding the Fifteenth Amendment, Congress, according to the plaintiffs, enacted the Temporary Organic Act of 1874 and the 1878 Organic Act for the express purpose of depriving the Negro citizens of the right to vote for municipal officers.

In the complaint it is also alleged that the 1878 Organic Act, as applied, has effected a discrimination against Negro citizens of the District of Columbia in that *de facto* segregation has prevented Negroes from securing residences in the adjacent areas of Maryland and Virginia, while white citizens may acquire residences in such areas and vote in their local elections. Moreover, the plaintiffs charge that the 1878 Organic Act works a further discrimination on the Negro citizens of the District of Columbia in that they do not enjoy absentee voting rights comparable to those of the white residents of the District. It is asserted that only 27.7% of the white citizens of the District of Columbia were born in the District of Columbia, as compared to 44.4% of the Negro citizens; therefore, of the persons who reside in the District of Columbia but who were born outside of the District, approximately 200,000 are eligible to vote under the absentee voter laws of 35 states resulting in an imbalance of absentee voter eligibility in favor of the white residents.

For relief the plaintiffs request: (1) A judgment declaring all statutes which vest legislative, rule making and executive powers in the defendants as being in conflict with the Ninth and Tenth Amendments and null and void; (2) a judgment declaring the 1878 Organic Act in conflict with the Fifteenth Amendment and null and void; (3) an injunction restraining defendants from exercising any legislative or executive functions vested in them as officers of the District of Columbia.

Substantially the same claims as asserted here were made in this Court during the past year in the case of Hobson v. Tobriner, 255 F.Supp. 295 (D.D.C.

---

3. Paragraph 20 of the complaint names five Negro plaintiffs, one of whom is alleged to be Flaxie Pinkett. This is obviously a mistake as no such person is named in the caption of the action and on page 10 of the complaint at the place provided for the signature of Flaxie Pinkett appears the word "omit."

1966). Judge Gasch of this Court denied the application for a three-judge court in that case. There the five plaintiffs were three Negro citizens and two white citizens. They sued individually and on behalf of the class composed of all citizens of the District of Columbia similarly situated. They named as defendants the Board of Commissioners of the District of Columbia, the individual members thereof, the Board of Elections of the District of Columbia, the members thereof, and the President of the United States.[4]

In their complaint the *Hobson* plaintiffs asserted that prior to 1874 the people of the District of Columbia elected the local government for the District of Columbia and that since that time the right to local suffrage has been abolished in the District of Columbia. The *Hobson* plaintiffs alleged that Congress by delegating to the defendant Board of Commissioners executive and legislative powers over the local government of the District of Columbia violated, among other Constitutional provisions, the Ninth, Tenth and Fifteenth Amendments to the Constitution. According to the *Hobson* plaintiffs the Ninth and Tenth Amendments reserved to them the right to vote for those who govern them in their affairs of local government. In the *Hobson* case it was claimed that the Fifteenth Amendment secured to the Negro plaintiffs the right to vote without regard to race or color; that the District of Columbia is the only major city in the United States where the voting age population is over fifty percent Negro and that the right to vote has been denied those Negroes by the statutes delegating executive and legislative power to the Board of Commissioners. The *Hobson* plaintiffs claimed that they were suffering irreparable injury because the District of Columbia governmental au-

thorities exercised their delegated powers—including the police power and power to tax—without being responsive to the popularly expressed will of the plaintiffs. The *Hobson* plaintiffs requested that a three-judge court declare unconstitutional the statutes providing for a Board of Commissioners of the District of Columbia and enjoin the defendants from enforcing or acting under any appointment made pursuant to such statutes.[5]

The application for a three-judge court by the *Hobson* plaintiffs was denied because the asserted claims of unconstitutionality were insubstantial. Hobson v. Tobriner, supra. Following Judge Gasch's ruling, four of the *Hobson* plaintiffs petitioned the United States Court of Appeals for this Circuit for a writ of mandamus ordering Judge Gasch to convene a three-judge court to hear the complaint on the merits. Under the date of September 29, 1966, the Court of Appeals entered an order, without opinion, denying plaintiffs' petition. Hobson v. Gasch, No. 20,388, D.C.Cir., Sept. 29, 1966. Thereafter a petition for a writ of certiorari was filed by four of the *Hobson* plaintiffs with the Supreme Court of the United States seeking a review of the Court of Appeals order. That petition was denied by the Supreme Court on February 14, 1967. 386 U.S. 914, 87 S.Ct. 863, 17 L.Ed.2d 787.

Since the claims asserted in the *Hobson* case and those herein are substantially the same, the present request for a three-judge court is denied for the reasons asserted in Judge Gasch's opinion, i. e., that the claims of unconstitutionality are insubstantial.

Further this conclusion is not affected by the second claim or cause of action since the racial discrimination there al-

4. Judge Gasch, *sua sponte*, dismissed the complaint as to the President of the United States. 255 F.Supp. at 301.

5. The *Hobson* plaintiffs also requested the three-judge court to designate an

interim Board of Commissioners until elections could be held by the people of the District of Columbia and that that court order the Board of Elections to conduct at-large elections by the people for the Board of Commissioners.

leged is insufficient to constitute a valid claim.

What the plaintiffs assert are: (1) The Temporary Organic Act of 1874 and the 1878 Organic Act were enacted for the express purpose of depriving Negro citizens of the District of Columbia the right to vote for municipal officers; (2) the 1878 Organic Act, as applied, has effected a discrimination against Negro citizens of the District of Columbia in that *de facto* segregation has prevented them from securing residences in adjacent Maryland and Virginia areas where, if they could reside, they would be able to exercise the right of suffrage in the local governments of those areas; (3) the 1878 Organic Act, as applied, has effected a further discrimination against Negro citizens of the District of Columbia, since 44.4% of them were born in the District of Columbia while only 27.7% of the white citizens of the District of Columbia were born there, and, therefore, a larger percentage of white citizens of the District of Columbia are eligible to vote under the absentee voter laws of 35 states.

■■ With respect to the plaintiffs' allegation that the 1874 and the 1878 Organic Acts were enacted for the express purpose of depriving the Negro citizen of his right to vote, counsel for the plaintiffs acknowledged, at oral argument, that that allegation was based only upon the motives of certain members of Congress as expressed by them in supporting passage of the Acts. It is sufficient to state that the motivation of particular legislators does not make a statute valid or invalid. Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435, rehearing denied, 364 U.S. 854, 81 S.Ct. 29, 5 L.Ed.2d 77 (1960); Barenblatt v. United States, 360 U.S. 109, 132, 79 S.Ct. 1081, 3 L.Ed.2d 1115, rehearing denied, 361 U.S. 854, 80 S.Ct. 40, 4 L.Ed.2d 93 (1959); Tenney v. Brandhove, 341 U.S. 367, 377, 71 S.Ct.

783, 95 L.Ed. 1019, rehearing denied, 342 U.S. 843, 72 S.Ct. 20, 96 L.Ed. 637 (1951); State of Arizona v. State of California, 283 U.S. 423, 425, 51 S.Ct. 522, 75 L.Ed. 1154 (1931); Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 130, 3 L.Ed. 162 (1810).

There is no merit to plaintiffs' assertion that, as applied, the 1878 Organic Act is invalid because Negro citizens cannot acquire residences in adjacent Maryland and Virginia and vote there in local elections. Neither the Organic Act nor any other Act of Congress has deprived Negro citizens of housing in any area in those states. State fair housing legislation or the absence of it is not involved in this action.

And equally without merit is plaintiffs' claim that the 1878 Organic Act, as applied, discriminates against Negro citizens with respect to being deprived of voting in local District of Columbia elections because there is a larger percentage of Negro citizens born in the District of Columbia than white citizens and, therefore, there are percentagewise more white persons than Negroes living in the District of Columbia eligible to vote absentee in state elections. But this action has to do with the claimed right to vote in local elections in the District of Columbia and not in the states. The circumstance of the place of birth can hardly be considered a discriminatory act on the part of the Federal Government.

As found here the claims of unconstitutionality are insubstantial. Thus this Court has no jurisdiction. Plaintiffs' request for convening a three-judge court is denied. Defendants' motion to dismiss is granted. Lion Manufacturing Corp. v. Kennedy, 117 U.S. App.D.C. 367, 330 F.2d 833 (1964); Eastern States Petroleum Corp. v. Rogers, 108 U.S.App.D.C. 63, 280 F.2d 611, cert. denied, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960).