**Robert H. HARGRAVE et al., Plaintiffs-Appellants,**

v.

**Shellie McKINNEY et al., Defendants-Appellees.**

**No. 27140.**

United States Court of Appeals Fifth Circuit.

June 9, 1969.

Glassie, Pewett, Beebe & Shanks, by Hershel Shanks, Allan I. Mendelsohn, Robert M. Perce, Jr., Washington, D. C., Frank & Grandoff, by Richard Frank, Tampa, Fla., for appellants.

William L. Durden, General Counsel, David U. Tumin, Asst. Counsel, City of Jacksonville, Jacksonville, Fla., for defendant.

Wayne M. Carlisle, Gainesville, Fla., for defendant, Shellie McKinney.

J. T. Chancey, Fort Lauderdale, Fla., for defendant, W. H. Meeks, Sr.

James R. Adams, Naples, Fla., for defendant, A. P. Ayers.

W. J. Ferguson, Lake City, Fla., for defendant, Alvin C. Hosford.

Thomas J. Shave, Jr., Fernandina Beach, Fla., for defendant, Ira W. Hall.

Landis, Graham, French, Husfeld & Sherman, William E. Sherman, DeLand, Fla., for defendant, Dorothy Matt Mills.

Harold F. Johnson, Sanford, Fla., for defendant, G. Troy Ray, Jr.

Clyde B. Wells, Defuniak Springs, Fla., for defendant, Jack Little.

Thomas C. Britto and Stuart Simon, Miami, Fla., for defendant, R. K. Overstreet.

Jack A. Harnett, Quincy, Fla., for defendant, W. A. Summerford.

F. E. Steinmeyer, III, Tallahassee, Fla., for defendant, Roy Lett.

V. Carroll Webb, Tallahassee, Fla., for defendant, Fred O. Dickinson, Jr.

Robert L. Nabors, Titusville, Fla., for defendant, J. D. Nash.

William J. Rish, Port St. Joe, Fla., for defendant, Harland O. Pridgeon.

John W. McWhirter, Jr., Tampa, Fla., for defendant, K. C. Bullard.

John L. Graham, Jr., Orlando, Fla., for defendant, Earl K. Wood.

Before RIVES, BELL and DYER, Circuit Judges.

RIVES, Circuit Judge:

We review here the District Judge's refusal to notify or request the Chief Judge of the Circuit to convene a three-judge court[1] and his dismissal of plaintiffs' complaint for lack of jurisdiction.[2]

---

1. Pursuant to 28 U.S.C. §§ 2281, 2284.

2. The judgment from which the appeal is prosecuted reads as follows:

"This cause coming on to be heard on the defendants' Motion to Dismiss the Complaint and the Court having considered the memoranda of law submitted by the respective parties, and the Court having further heard the argument of counsel, and being otherwise fully advised in the premises, it is upon careful consideration,

"ORDERED AND ADJUDGED

"I. That the defendants' Motion to Dismiss the Complaint for lack of jurisdiction be and the same is hereby granted and the action is hereby dismissed with prejudice on the following grounds:

"1. That the Court finds that the matter presented to the Court by the plaintiffs clearly affects the fiscal affairs of the State of Florida and the political subdivisions thereunder. * * *

"2. Title 28 U.S.C.A. Section 1341 is applicable and there are plain, speedy and efficient remedies available in the state courts. The plaintiffs concede and the Court finds that state relief has neither been attempted nor invoked.

The complaint attacks, under the equal protection clause of the Fourteenth Amendment, a Florida statute which provides that any county that imposes on itself more than 10 mills ad valorem property taxes for educational purposes will not be eligible to receive State funds for the support of its public education system.[3]

The legal theory of the attack is succinctly stated in plaintiffs' brief as follows:

"At the time the Act was passed in February 1968, 24 Florida counties had imposed on themselves taxes in excess of this 10-mill limit for the 1968–69 school year. To avoid losing state funds, each of these counties is collecting only the 10-mill statutory maximum. The Complaint charges that the state statute which imposes this limit on the authority of the counties to tax themselves violates the Equal Protection Clause of the United States Constitution because the state limitation is fixed by reference to a standard which relates solely to the amount of property in the county, not to the educational needs of the county. Counties with high property values in relation to their school population are authorized by the state to tax themselves far more in relation to their educational needs than counties with low property values in relation to their school population. Thus, Charlotte County may raise by its own taxes $725 per student, while Bradford County is permitted by the State to raise only $52 per student. To limit the extent to which a county may tax itself to provide for its educational needs by reference to the amount of property in the county, which amount is wholly unrelated to the educational needs of the county, is arbitrary and unreasonable and therefore violates the Equal Protection Clause because it thereby fails to provide Florida children with an economically equal educational opportunity."

■ A court of appeals has jurisdiction to review the action of a one-judge district court in dismissing a complaint instead of taking appropriate steps to convene a three-judge district court.[4]

■■ The landmark case of Idlewild Bon Voyage Liquor Corp. v. Epstein,

---

"3. The cases cited by the defendants and particularly that of Carson v. City of Fort Lauderdale, 293 F.2d 337 (5th Cir. 1961) are applicable and controlling.

"4. Title 42, U.S.C. Sections 1981 and 1983, are not applicable under the allegations contained in the Complaint.

"5. Although the question of mootness has been raised by the defendants, the Court concludes that in reality the issues are not entirely moot, but that the relief sought would create a chaotic state of affairs in the fiscal responsibilities and duties throughout the affected areas of the State of Florida. The State of Florida should be granted the opportunity to have presented, in its proper forums, the issues as to the constitutionality and validity of the governing statutes controlling the areas complained of, and of the meaning and effect of the applicable provisions of the newly adopted Constitution of the State of Florida, as well as the effect of the presently existing constitution.

"II. That because this Court lacks jurisdiction of this action and for the other reasons reviewed above, the plaintiffs' Motion to Convene a Three-Judge Court, pursuant to the provisions of Title 28, U.S.C.A., Sections 2281–2284, be and the same is hereby denied."

3. Section 23 of Chapter 68–18, Florida Laws, enacted at the Extraordinary Session of 1968 of the Florida Legislature, provides as follows:

"Effective July 1, 1968 each county board of public instruction desiring to participate in the minimum foundation program for kindergarten and grades one (1) through twelve (12) shall levy no more than ten (10) mills of tax on the non-exempt assessed valuation of the county, exclusive of voted district building and bus, required debt service, and the millage required for junior college minimum effort."

4. Wilson v. City of Port of Lavaca, 1968, 391 U.S. 352, 88 S.Ct. 1502, 20 L.Ed.2d 636; Schackman v. Arnebergh, 1967, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865; Keyishian v. Board of Regents, 1967, 385 U.S. 589, 593, n. 2, 87 S.Ct. 675, 17 L.Ed.2d 629.

1962, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed. 2d 794, defines the inquiry by the district judge.

> "When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute."

370 U.S. at 715, 82 S.Ct. at 1296; O'Hair v. United States, 281 F.Supp. 815, 819 (D.D.C.1968); *but cf.* Jackson v. Choate, 5 Cir. 1968, 404 F.2d 910, 912. Our sole function is to review district court determinations with respect to the three prerequisites to the convocation of a three-judge court.[5] Our opinion merely determines the sufficiency of plaintiffs' claim for three-judge relief, and to the extent that the constitutionality of the state tax scheme is discussed, we express no opinion as to the ultimate resolution of that issue.

I. *Does the complaint at least formally allege a basis for equitable relief?*

▮ Our inquiry focuses first on the allegations of the complaint since the single district judge performs similar operations in determining sufficiency in all civil cases—including those which require a district court of three judges. Idlewild Bon Voyage Liquor Corp., *supra,* at 715, 82 S.Ct. 1294 (complaints need only formally allege a basis for equitable relief). *Cf.* Mosher v. City

of Phoenix, 1932, 287 U.S. 29, 30, 53 S.Ct. 67, 77 L.Ed. 148; Buchanan v. Rhodes, 249 F.Supp. 860, 862–863 (N.D. Ohio 1966) (Application of Rule 12(b)(6), Fed.R.Civ.P., 28 U.S.C.). Moreover, the complaint should be liberally construed and well-pleaded material allegations taken as admitted. Ward v. Hudnell, 5 Cir. 1966, 366 F.2d 247, 249. *See generally* 2A J. Moore, Moore's Federal Practice ¶ 12.08. Should plaintiffs prove their alleged set of facts, the dispute will to a large extent be limited to a consideration of some recently developed ideas of equal protection. The novelty of the constitutional argument should not, however, blind us to our narrow duty of determining the sufficiency of alleged facts. Taking plaintiffs' allegations (that the State, which supplies approximately 60% of operating funds to the Board of Public Instruction, will cut off its contributions should the counties levy more than 10 mills of local funds) as true, we note that plaintiffs' claims may find some support in recently acceptable legal theories. *Cf.* Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. The equal protection argument advanced by plaintiffs is the crux of the case. Noting that lines drawn on wealth are suspect[6] and that we are here dealing with interests which may well be deemed fundamental,[7] we cannot say that there is no reasonably arguable theory of equal protection which would support a decision in favor of the plaintiffs. See McDonald v. Board of Election, 1969, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739. *See also* Developments in the Law—Equal Protec-

---

5. Plaintiffs' complaint otherwise "comes within the requirements of the three-judge statute." 370 U.S. at 715, 82 S.Ct. at 1296. *See* 28 U.S.C. 2281. This is not merely a suit against local taxing officials. It is an attack, on constitutional grounds, upon a statewide statutory scheme. State officers are defendants and injunctive relief has been requested. *Cf.* Ex parte Public National Bank of New York, 1928, 278 U.S. 101, 104–105, 49 S.Ct. 43, 73 L.Ed. 202.

6. McDonald v. Board of Election, 1949, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739; Harper v. Virginia Board of Elections, 1966, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169; Douglas v. California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 12, 100 L.Ed. 891.

7. *Cf.* Brown v. Board of Education, 1954, 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873; Hobson v. Hansen, 269 F.Supp. 401 (D.D.C.1967), aff'd *sub nom,* Smuck v. Hobson, D.C. Cir. 1969, 408 F.2d 175.

tion, 83 Harv.L.Rev. 1065, 1120, *et seq.* (1969); Kurland, Equal Educational Opportunity: The Limits of Constitutional Jurisprudence Undefined, 35 U. Chic.L.Rev. 582 (1968).

II. *Other Jurisdictional Considerations.*

A. Having concluded that plaintiffs' complaint at least formally alleges a basis for equitable relief, we review next the district judge's dismissal of the complaint on the basis of his finding that 28 U.S.C. § 1341 [8] operates as a jurisdictional bar to the maintenance of this action. We hold that the *jurisdictional* bar of Section 1341 is inapplicable to the instant situation and that the district court erred in dismissing the complaint on the basis of that statute. Our holding, which is exceedingly narrow and does not preclude considerations of federalism by the three-judge court, *infra*, p. 327, can be best understood by examining the history of Section 1341.

The expansion of the federal judicial power countenanced by the Supreme Court in Ex parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, "brought about a major shift in the actual distribution of power between states and nation" which was not "overlooked by Congress, or by the spokesmen of the interests adversely affected." H. Hart and H. Wechsler, The Federal Courts and the Federal System, pp. 846–847 (1953). Congress responded to the federal courts' newly-declared power to enjoin actions by state officials in their enforcement of state legislative acts by enacting four major pieces of legislation.[9] For our purposes the relevant congressional limitation of federal jurisdiction sanctioned by Ex parte *Young* is now codified in 28 U.S.C. § 1341, supra, n. 8. This section, popularly known as the Tax In-

junction Act of 1937, 50 Stat. 738, was enacted as an addendum to the predecessor of 28 U.S.C. § 1342, the *Johnson Act. See* 28 U.S.C. § 41(1) (1940, 1946 ed.). We should not confuse the two acts but rather focus upon the legislative history of the 1937 Act so as to ascertain the congressional policy underlying the legislation. Mr. Justice Fortas, writing for the Supreme Court in Department of Employment v. United States, 1966, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414, found "convincing evidence of legislative purpose" in the congressional materials quoted below. 385 U.S. at 358, n. 7, 87 S.Ct. 464 and accompanying text.

■ There is a twofold purpose underlying Section 1341. First, it is directed at the elimination of unjust discrimination between citizens of the State and foreign corporations. As the Senate Judiciary Committee said in its report recommending adoption:

"If those to whom the federal courts are open may secure injunctive relief against the collection of taxes, the highly unfair picture is presented of the citizen of the State being required to pay first and then litigate, while those privileged to sue in the federal courts need only pay what they choose and withhold the balance during the period of litigation." [10]

And, second, it is directed at eliminating the practice whereby foreign corporations could disrupt State financing efforts. The Senate Report said that the system then in vogue:

" * * * makes it possible for foreign corporations doing business in such States to withhold from them and their governmental subdivisions

---

8. *"Taxes by States.* The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

9. (1) Three-judge requirement of 1910 presently codified in 28 U.S.C. § 2281. (2) The stay requirement of 1913 pres-

ently codified in 28 U.S.C. § 2284 (last paragraph). (3) Johnson Act of 1934 prohibiting injunctions against state public utility rate orders—presently codified in 28 U.S.C. Section 1342. (4) Tax Injunction Act of 1937—at issue in the instant case.

10. S.Rep.No. 1035, 75th Cong., 1st Sess. 1–2 (1937).

taxes in such vast amounts and for such long periods of time as to seriously disrupt State and county finances. The pressing needs of these States for this tax money is so great that in many instances they have been compelled to compromise these suits, as a result of which substantial portions of the tax have been lost to the States without a judicial examination into the real merits of the controversy." [11]

Upon this background we must determine the scope of the jurisdictional bar in Section 1341. The issue is whether the bar of Section 1341 encompasses a suit to order collection and disbursement of certain county tax monies. It is clear that this suit does not come within the literal language of Section 1341. It is not a suit to enjoin, restrain or suspend the collection of a tax, but to the contrary is a suit to require the collection of taxes which citizens of a county have voted to impose on freeholders in the county. Thus, we must resolve the narrow question of whether the policies which underlie Section 1341 operate so as to make that section a *jurisdictional*

bar to the maintenance of this action. Emphasis on the word jurisdictional is useful to highlight it as a word of art. Jurisdiction is a matter of naked power which can be regulated only by Congress consistent with Article III of the Constitution.[12] Encroachments on the federal judiciary's power to vindicate rights allegedly guaranteed by the Constitution must be construed narrowly. *Cf.* Phillips v. United States, 1941, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800. Moreover, the Supreme Court has pointed out that restrictions upon the federal court's equity jurisdiction (before the Federal Rules) even in cases involving the fiscal affairs of a state were construed so as to preserve federal jurisdiction where "the asserted federal right (could not) be preserved without it." Matthews v. Rodgers, 1932, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447. In view of the legislative history of this section and the myriad of cases holding generally that Section 1341 should be applied so as to protect the integrity of the state treasury, we hold that this section does not, as a *jurisdictional* matter, bar plaintiffs from the federal courts.[13]

---

11. *Ibid.*

12. It is of the utmost import to note that Section 1341 may, in addition to its role as a jurisdictional statute, codify a principle of discretion in the exercise of jurisdiction. Any decision as to the role Section 1341 may play in matters of discretion must, however, be made by a court of three judges pursuant to 28 U.S.C. §§ 2281–84. We review today the actions of a single district judge whose power is limited to matters which are *jurisdictional*, not discretionary. Idlewild Bon Voyage Liquor Corp. v. Epstein, 1962, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794.

13. Appellees rely heavily on case law to sustain their view of Section 1341 as a jurisdictional bar. Carson v. City of Fort Lauderdale, 5 Cir. 1961, 293 F.2d 337, however, was a suit by taxpayers seeking to enjoin the levy of a sewerage tax. That case fell within the literal prohibition of Section 1341. To the same effect was Gray v. Morgan, 7 Cir. 1966, 371 F.2d 172. Helmsley v. City of Detroit, 6 Cir. 1963, 320 F.2d 476, involved

declaratory relief and apparently followed Great Lakes Dredge & Dock Co. v. Huffman, 1943, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407.

Reliance is placed upon City of Houston v. Standard Triumph Motor Company, 5 Cir. 1965, 347 F.2d 194. We read the bar in that case to be not applicable here. First, the dissenting opinion points out that the majority's decision is predicated on *Great Lakes, supra,* which was an abstention decision, not a jurisdictional determination. *See* 347 F.2d at 103. Second, the fiscal integrity of the state was at issue in both *City of Houston* and *Great Lakes:* A successful declaratory judgment would inhibit the revenue-gathering powers of the state to the same extent as injunctive relief. The instant suit, however, does not involve restrictions of the money-gathering power. Rather, this suit is one to compel the collection and disbursement of higher taxes. Finally, we do not read *City of Houston* as a jurisdictional barrier in actions not falling within the literal terms of the Act since Congress is the only competent en-

Our holding here in no way intimates an opinion upon the question of whether the federal courts, in the exercise of their discretion, should take jurisdiction of this claim. We merely decide that Congress has not expressly rendered the federal judiciary incompetent to adjudicate this dispute. We note that serious questions of federalism inhere in this claim for relief. Nonetheless, it is not the function of this court or the single district judge to resolve such questions. Rather, this is the special province of the three-judge court. *Supra*, n. 3.

■ B. Another jurisdictional consideration is mootness—which the defendants do not seriously assert. In November 1968, Florida adopted a new State Constitution which also contains a 10-mill limitation.[14] Admittedly, the new State Constitution is not applicable to the current school year and will not be applicable before the 1969–1970 school year. It is not clear whether the limitation for the 1969–1970 school year will be imposed by Section 23 of the statute or by Article VII, Section 9 of the new Constitution. In either event, it is subject to the supremacy clause of the Constitution of the United States, U.S. Const., Art. VI, Section 1. We agree with the district court that the issues raised by this complaint have not become moot.

Having inquired into the allegations of the complaint and having considered other jurisdictional prerequisites, we hold that plaintiffs' complaint sufficiently alleges a claim for equitable relief to bring the case within the requirements of the three-judge district court statute, if the constitutional question raised is substantial.

### III. *Do plaintiffs raise a substantial constitutional issue?*

The Supreme Court has clearly defined substantiality for purposes of convening a three-judge court:

> The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint. Mosher v. City of Phoenix, 287 U.S. 29, 30 [53 S.Ct. 67, 77 L.Ed. 148]; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105 [53 S.Ct. 549, 550, 77 L.Ed. 1062]. The question may be plainly unsubstantial, either because it is "obviously without merit" or because "its unsoundness so clearly results from the previous decisons of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy."

Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933). Swift & Co. v. Wickham, 1965, 382 U.S. 111, 115, 86 S.Ct. 258, 15 L.Ed.2d 194. We readily observe that prior decisions of the federal judiciary do not foreclose consideration of plaintiffs' equal protection argument. *See* McInnis v. Shapiro, 293 F.Supp. 327, (N.D.Ill.1968), McInnis v. Ogilvie, aff'd 394 U.S. 322, 89 S.Ct. 1197, 22 L.Ed.2d 308; Burruss v. Wilkerson, 301 F.Supp. 1237 (W.D.Va.1968) (single judge convening three-judge court). Thus, the narrow question for our determination is whether plaintiffs' claim is "obviously without merit." 290 U.S. at 32, 54 S.Ct. 3. *Cf.* California Water Service Co. v. City of Redding, 1938, 304 U.S. 252, 254–255, 58 S.Ct. 865, 82 L.Ed. 1323.

---

tity to amend a jurisdictional statute. *See* Great Lakes, 319 U.S. at 300, 63 S. Ct. 1070. *Cf.* Study of the Division of Jurisdiction Between State and Federal Courts, American Law Institute, (Tent. Draft #6) § 1371(a).

14. Art. VII, Section 9 of the new Florida Constitution provides in pertinent part: "Counties, school districts, and munici-

palities may be authorized by law to levy ad valorem taxes and other taxes. Millages are limited to 10 mills for all county purposes, 10 mills for municipal purposes, and 10 mills for school purposes. Bond millages are excluded, and additional millages without limitation are permitted if approved by freeholders paying taxes."

■ The allegations of the complaint posit a fact situation which, under recently elasticized theories of equal protection, give rise to a constitutional claim. *Supra,* n. 6. We note that this claim is not essentially frivolous or wholly lacking in merit. Regardless of our personal reactions to the merits of plaintiffs' position and regardless of the novelty of the theories which support their position, we cannot say that their view of the taxing scheme is beyond challenge. We do not sit as a three-judge district court to determine whether plaintiffs' claim is good or bad on the merits. All we decide is that the claim is such an arguable one as to be "substantial" within the *Poresky* definition. *Cf.* Schneider v. Rusk, 1963, 372 U.S. 224, 225, 83 S.Ct. 621, 9 L.Ed.2d 695.[15]

We express no view as to the materiality or applicability of Rule 23 of the Federal Rules of Civil Procedure. Those questions are not ripe for appellate review until first ruled on by a three-judge district court. *See* Law Students Civil Rights Research Council v. Wadmond, 291 F.Supp. 772, 776–777 (S.D.N.Y. 1968).

The judgment is reversed and the cause remanded with directions to take appropriate steps to convene a three-judge district court.

Reversed with directions.

BELL, Circuit Judge (dissenting):

I respectfully dissent. There are three sound grounds, in my judgment, for affirming the district court.

First, any known principle of comity would dictate that the legality of the statute in question be tested in the state courts. It involves the fiscal affairs of the State of Florida and goes to the heart of the taxing process. The local property tax limitation in question is only a part of the total state and local taxing scheme and legality *vel non* necessarily draws the entire taxing process into consideration. A federal court should be reluctant to interfere with the fiscal affairs of a state even by declaratory judgment.

Second, assuming *arguendo* that a cause of action lies under the theory of the complaint for violation of the equal protection clause, there is no way, under the allegations of the complaint and the admitted facts, to demonstrate discrimination through the statute under attack. Without such a premise, the equal protection question is insubstantial. That there can be no such premise became clear on the oral argument of this case when it was agreed that there is no uniform valuation of property in the State of Florida for assessment purposes. To show discrimination as amongst the children in the various Florida counties, one county as against another county, it would be necessary to first know what an ad valorem tax levy would produce. This cannot be known absent an uniform valuation system. A one mill levy in one county may be based on an assessment of ten per cent of actual value while in another it may be based on an assessment of some other percentage of actual value. To increase the complexity, it would then be necessary, from the standpoint of each child's share of the education revenues, to relate all state education expenditures under the distributive formula of the Florida Minimum Foundation Program for Education (F.S.A. Sections 236.01–236.07), to the children in the respective Florida

---

15. In the present state of flux, insubstantiality in cases involving the Equal Protection Clause may be difficult to demonstrate under the rubric of "obviously without merit." The change in doctrinal development under the Equal Protection Clause can best be seen in two recent Supreme Court decisions. McDonald v. Board of Election, *supra,* n. 6, and Shapiro v. Thompson, 1969, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600.

counties. In addition, federal funds for education must also be added to the total before the equal protection computation could be made. Once this was all known, it would then be possible for one to determine whether discrimination exists as betwen the local school systems. This state of affairs means that no cognizable equal protection question is presented for an equal protection claim must rest on discrimination. Cf. Davis v. Georgia State Board of Education, 5 Cir., 1969, 408 F.2d 1014 [March 11, 1969].

Moreover, as a third ground, it would appear, contrary to what the majority implies in citing the same case, that the Supreme Court has already declined an equal protection elasticity approach analogous to that asserted by appellants. McInnis v. Shapiro, 293 F.Supp. 327 (three-judge court, N.D.Ill., 1968), aff'd sub nom. McInnis v. Ogilvie, 394 U.S. 322, 89 S.Ct. 1197, 22 L.Ed.2d 308 (1969). There the three-judge district court concluded that the equal protection clause did not require the apportioning of state funds as among school districts according to the educational needs of the students. In addition to this basic holding, the court went further to say that even if the equal protection clause required such an apportionment, the controversy would be nonjusticiable in that court-manageable standards would be lacking.

Thus we need not contemplate what a three-judge district court may hold here on the merits in light of the *McInnis* case, for, as was held in Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), it is not necessary to convene a three-judge court to determine a constitutional question which is settled. The most that can be said of appellants' position is that it is novel. We should require substance as well as novelty. I would hold now that the question is settled.