**Robert H. HARGRAVE et al., Plaintiffs,**

v.

**Governor Claude R. KIRK, Jr., et al., Defendants.**

No. 68–463–Civ.–T.

United States District Court, M. D. Florida.

May 7, 1970.

Hershel Shanks, Allan I. Mendelsohn, and Robert M. Perce, Jr., of Glassie, Pewett, Beebe & Shanks, Washington, D.C., Richard Frank, Tampa, Fla., and David Rubin, Washington, D.C., for plaintiffs.

Rivers Buford, Jr., Gen. Counsel, State of Florida Bd. of Education, Tallahassee, Fla., for defendants.

Before DYER, Circuit Judge, LIEB, Chief District Judge, and KRENTZMAN, District Judge.

DYER, Circuit Judge:

Plaintiffs [1] by this class action attack, under the Equal Protection Clause of the Fourteenth Amendment, the constitutionality of Section 23, Chapter 68–18 Florida Laws, enacted at the Extraordinary Session of 1968 of the Florida Legislature, F.S.A. § 236.251,[2] commonly referred to as the "Millage Rollback Act," which provides that any county that imposes on itself more than ten mills in *ad valorem* property taxes for educational purposes will not be eligible to receive state minimum foundation program (MFP) funds for the support of its public education system. Plaintiffs seek to

---

1. Each of the plaintiffs is a citizen of Florida and a resident of one of sixteen counties, and is either a freeholder/parent or student in the public schools of Florida.

2. The statute provides in pertinent part:
   Effective July 1, 1968, each county board of public instruction desiring to participate in the minimum foundation program for kindergartens and grades one through twelve shall levy no more than ten mills of tax on the non-exempt assessed valuation of the county, exclusive of voted district building and bus, required debt service, and the millage required for junior college minimum effort.

enjoin the defendants [3] from enforcing the statute.

A single District Judge dismissed the suit. The Court of Appeals reversed the District Court's jurisdictional rulings and concluded that the complaint presented a substantial constitutional question. It remanded with directions to convene a three-judge District Court. Hargrave v. McKinney, 5 Cir. 1969, 413 F.2d 320. After answer was filed, both parties moved for Summary Judgment on the ground that there was no issue of material fact. We agree that the case is ripe for decision.

Florida's public schools are financially supported by statewide and local taxation. Minimum Foundation Program (MFP) funds are appropriated by the state and distributed to the counties in accordance with certain indices of the educational needs of a particular county. This program is not under attack. By its calculations the MFP determines the cost of funding a minimal education system in a county. From this total cost there is deducted a certain minimum amount which each county must raise itself if it desires to receive state MFP funds. The difference is the amount of MFP funds which the state appropriates to the county.

The other source of funds for the support of public education is derived from local taxation. Local taxes are of two kinds. The first, known as County Millage, is imposed by the School Board. It cannot exceed ten mills. Fla.Const. (1968 Revision), art. VII, § 9, F.S.A. The second, known as District Millage, must be authorized by a vote of the freeholders and then may be imposed by the School Board. *Ibid.* Additionally the Federal Government contributes about two or three percent of public education funds in Florida.

Under the Millage Rollback Act, the District and County Millages cannot exceed in the aggregate ten mills, plus the millage necessary to provide district building and bus funds, funds for debt service and funds for junior college support. These latter funds are not involved in, nor are they material to, a determination of this case.

Prior to the passage of the Millage Rollback Act, the voters in 24 counties had authorized their School Boards, for the school years 1967–1968 and 1968–1969, to impose District Millage in addition to the ten mills of County Millage which could be imposed by the Board without voter authorization. With the passage of the Act, each of these 24 counties rolled back its millage to the ten mill limit for the 1968–1969 school year to avoid losing state MFP funds. The result was to reduce the amount of money derived from local taxes for educational purposes which counties could raise for themselves. Measured by the reduction in millage from the year before the Act was passed the loss exceeded $50,000,000.00. See Appendix.

The plaintiffs contend that the Millage Rollback Act violates the Equal Protection Clause of the Fourteenth Amendment because the limitation is fixed by reference to a standard which relates solely to the amount of property in the county, not to the educational needs of the county. The plaintiffs argue that the Act promotes no compelling state interest, and is arbitrary and unreasonable because it fails to provide Florida children with an economically equal educational opportunity.

The defendants counter by contending that the difference in the dollars available does not necessarily produce a difference in the quality of education; that the relief sought cannot remedy the evil alleged; that the Act does not constitute a blanket prohibition against a county levying additional *ad valorem* taxes because it may choose to do so and forego its MFP funds; and finally, that on the principle of comity we should abstain from considering the case in deference

---

3. The defendants constitute the membership of the State Board of Education and others who regulate the amount of state MFP funds which is paid to the County Boards of Education.

to a state court proceeding, filed subsequent to this suit, attacking the validity of the Millage Rollback Act.

■ We take up defendant's last argument first. We find no special circumstances in this case that would persuade us to apply the doctrine of abstention. The fact that a state remedy is available is not a valid basis for federal court abstention. Monroe v. Pape, 1961, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed. 2d 492; McNeese v. Board of Education, 1963, 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622; Zwickler v. Koota, 1967, 389 U.S. 241, 251, 88 S.Ct. 391, 19 L.Ed.2d 444. There can be no doubt in this case about what the statute means. It defies any interpretation that would or could avoid or modify the constitutional question. In such a case it is the duty of a federal court to exercise its jurisdiction. Zwickler v. Koota, *supra;* Harman v. Forssenius, 1965, 380 U.S. 528, 534–535, 85 S.Ct. 1177, 14 L.Ed.2d 50; *cf.* Reetz v. Bozanich, 1970, 397 U.S. 88, 91, 90 S.Ct. 788, 25 L.Ed.2d 73, 76; Wright v. City of Montgomery, Alabama, 5 Cir. 1969, 406 F.2d 867, 871. Nor does the fact that the instant case involves a state tax scheme bring it within the proscription of 28 U.S.C.A. § 1341 or the abstention doctrine of Great Lakes Dredge & Dry Dock Co. v. Huffman, 1943, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407. Section 1341 prohibits federal courts from enjoining the assessment, levy or collection of any tax under state law where the state law provides an efficient remedy; *Great Lakes* requires abstention where only declaratory relief is sought with regard to a state statute relating to the assessment, levy or collection of taxes. The considerations underlying Section 1341 and the *Great Lakes* abstention doctrine are inapplicable here because the plaintiffs in the instant case are not attempting to strike down an assessment and collection scheme but, on the contrary, are attempting to obtain the right to have such a scheme.

■ Turning now to the defenses asserted, it may be that in the abstract "the difference in dollars available does not necessarily produce a difference in the quality of education." But this abstract statement must give way to proof to the contrary in this case. For example, with the enforced millage reduction in 1968–1969, the approximate dollar reduction in Broward County alone exceeded $1,300,000. As a result of this, the Board of Public Instruction of Broward County informed the State Superintendent of Schools that it could not balance its budget for the 1969–1970 school year without exceeding the ten mill limit. Furthermore, the unreality of the defendant's contention is pointed up by the wide disparities which the Millage Rollback Act creates. For example Charlotte County by using the ten mill limit may raise, by its own taxes, $725 per student, while Bradford County, also using the ten mill limit, can raise only $52 per student. What apparently is arcane to the defendants is lucid to us—that the Act prevents the poor counties from providing *from their own taxes* the same support for public education which the wealthy counties are able to provide.

■ The argument that the relief sought cannot remedy the evil alleged gives us little pause. First it does not meet the constitutional issue under the Equal Protection Clause. Second, the proven facts simply contradict the possibility posed by the defendants that School Boards will not choose to levy taxes in excess of ten mills.

■ The defendants finally urge that the counties are not prohibited from levying *ad valorem* taxes in excess of ten mills because they may choose to do so and forego their MFP funds. This fact, in defendants' view, avoids the constitutional issue. We disagree. The State may not grant a benefit subject to a condition which violates the Equal Protection Clause. *See* Sherbert v. Verner, 1963, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965; Keyishian v. Board of Regents of New York, 1967, 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed. 2d 629.

■ The disposition of the defendants' contentions does not dispose of the case. We cannot circumnavigate the issue squarely presented by the plaintiffs, —*i. e.*, does the Act, which imposes a ten mill limit on the authority of the counties to tax themselves without losing MFP funds, violate the Equal Protection Clause because the limitation is fixed by reference to a standard which relates solely to the amount of property in a county and not to the educational needs of the county? The determination of this question depends first upon whether there is any rational basis for the distinction drawn. If there is a rational basis for the distinction, it must then be determined whether the right which is infringed is "a basic, fundamental right," and, if so, whether the distinction which the legislature has drawn serves a "compelling state interest." McDonald v. Board of Election, 1969, 394 U.S. 802, 806–807, 89 S.Ct. 1404, 22 L.Ed.2d 739.

■ We start with the proposition that the equal protection clause requires "the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." Reynolds v. Sims, 1964, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506. Even though the Act in question applies uniformly to each county, it may nevertheless violate the Equal Protection Clause if its effect is discriminatory. *See* McLaughlin v. Florida, 1964, 379 U. S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222.

What rational basis can be found for the distinctions that are inherent in the Act? Do they have any rational relationship to a legitimate state end, or are they based on reasons totally unrelated to the pursuit of that goal? McDonald v. Board of Election, *supra*. What interest has the State of Florida in pre-

venting its poorer counties from providing as good an education for their children as its richer counties? As postulated by the plaintiffs, "The legislature says to a county, 'You may not raise your own taxes to improve your own school system, even though that is what the voters of your county want to do.'" We have searched in vain for some legitimate state end for the discriminatory treatment imposed by the Act.

■ While the state undoubtedly has a valid interest in preserving the fiscal integrity of its programs, and may legitimately attempt to limit its expenditures for public education, or any other purpose, it "may not accomplish such a purpose by invidious discrimination between classes of its citizens." Shapiro v. Thompson, 1969, 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600.

Stressing education as a "sine qua non to the proper functioning of our polity," plaintiffs urge that education must be regarded as a fundamental right and that rather than apply the "rational basis" standard, the Act can be sustained only if it can be shown to promote a "compelling governmental interest." Shapiro v. Thompson, *supra*; McDonald v. Board of Election Commissioners, *supra*. Having concluded that there is no rational basis for the distinction which the legislature has drawn, we decline the invitation to explore the fundamental-right-to-an-education thesis, and thus we do not reach the more exacting "compelling interest" approach.

We are not unmindful of the recent decision of McInnis v. Shapiro,[4] N.D.Ill. 1968, 293 F.Supp. 327, (three-judge court), aff'd sub nom. McInnis v. Ogilvie, 1969, 394 U.S. 322, 89 S.Ct. 1197, 22

4. Judge Bell wrote a strong dissent in the case *sub judice* when it was on appeal from a dismissal by a single District Judge. Hargrave v. McKinney, *supra*, 413 F.2d at 328. He expressed the view that a federal court should be reluctant to interfere with the fiscal affairs of the state, that no discrimination could be shown because there is no uniform valuation of property in Florida for assessment purposes, and that in the light of *McInnis* the Equal Protection Clause did not require the apportioning of school funds among the districts according to the educational needs of the students. After a discussion of *McInnis*, we will take up the first two grounds of the dissent *post*.

L.Ed.2d 308 [followed by Burruss v. Wilkerson, W.D.Va.1969, 301 F.Supp. 1237 (three-judge court), aff'd, 397 U. S. 44, 90 S.Ct. 812, 25 L.Ed.2d 37 (1970)], which held that the Fourteenth Amendment does not require that public school expenditures be made only on the basis of pupils' educational needs. However, *McInnis* is readily distinguishable from the instant case. There the laws structuring the financing of public schools in Illinois were challenged because "[s]tate statutes which permit such wide variations [in the expenditure per student from district to district] allegedly deny the less fortunate Illinois students of [*sic*] their Constitutional rights." 293 F.Supp. at 330. The Court carefully pointed out that "the General Assembly's delegation of authority to school districts appears designed to allow individual localities to determine ,their own tax burden according to the importance which they place upon public schools." 293 F.Supp. at 333. This delegation of power was upheld. The opposite situation confronts us in this case, where the school districts (counties) are seeking, through the plaintiffs *to be able* "to determine their own tax burden according to the importance which they place upon public schools."

The Florida Act *prevents* the *local Boards* from adequately financing their children's education. The complaint is not that the state *permits* the Boards to spend less, but that it *requires* them to spend less. Plaintiffs are asking to be able to *raise* more money *locally*. In *McInnis* the plaintiffs wanted the *state* to *give* them more. Irrespective of the plaintiffs' successful attack on the Act, we know that there will continue to be disparities in per pupil expenditures in Florida, either because some counties may not desire to spend as much as other counties on the education of their children, or because, in the poorer counties, they cannot. Plaintiffs do not contest the variations in per pupil expenditures

from these causes, but only "the unequal impediment placed on us by the state because we are poor." We consider this to be a fundamental distinction between the cases.

The alternative ground for denying relief in *McInnis* was that reallocation of state funds was sought on the basis of varying educational needs of the individual students. How this was to be achieved was unclear, and the term "educational needs" was found to be a nebulous concept. The court found that, in any event, "educational need" was a judicially unmanageable standard. 293 F. Supp. at 336.

In contrast, in the instant case, the plaintiffs' argument simply stated is that the Equal Protection Clause *forbids* a state from allocating authority to tax by reference to a formula based on wealth. Unlike the broad relief sought in *McInnis*, the remedy here is simple— an injunction against state officials from taking any action because of a county's refusal to limit its taxes to ten mills imposed by the Act. We conclude that the problems presented by *McInnis* are not present here.

As an epilogue, when this case was before the Court of Appeals, the plaintiffs sought to require various local tax collectors to collect more than $62,-000,000 in back taxes. By amendment before this Court, the only relief sought is an injunction against the application of the Millage Rollback Act. The granting of this relief will give the disadvantaged counties authority to raise their taxes above the ten mill limit, and the defendants will continue to distribute the MFP funds to the local counties in same extent as in the past. Thus, our judgment holding the Act unconstitutional will not interfere at all with the state's fiscal affairs and operations, nor will it interfere with the orderly and effective operation of the schools or the asessment and collection of taxes.[5]

5. The amendment of the complaint and change in the relief sought has, we believe, overcome the objections voiced by

Judge Bell in his dissent to the convening of a three-judge court. *See* note 4, *supra*.

For the reasons we have outlined we hold that the provisions of the Millage Rollback Act, F.S.A. § 236.251—which required as a condition of participation in the state's Minimum Foundation Program that a county board of public instruction "shall levy no more than ten mills of tax on the non-exempt assessed valuation of the county, exclusive of voted district building and bus, required debt service, and the millage required for junior college minimum effort"—are unconstitutional. The plaintiffs' Motion for Summary Judgment is granted, and the defendants are enjoined from withholding MFP funds from any county by virtue of the provisions of such Act.

## APPENDIX

The following counties have enforced millage reductions in 1968–69:

| County | 1967–68 Operating Millage | 1968–69 Operating Millage | Enforced Millage Decrease | Approximate Dollar Reduction |
|---|---|---|---|---|
| Alachua | 13.0 | 10.60 | 2.40 | $ 802,517 |
| Brevard | 14.88 | 11.29 | 3.59 | 2,921,310 |
| Broward | 10.67 | 10.24 | .43 | 1,312,304 |
| Collier | 11.45 | 10.00 | -0-* | |
| Columbia | 11.729 | 10.00 | 1.729 | 135,953 |
| Dade | 12.32 | 10.28 | 2.04 | 12,812,703 |
| Dixie | 14.874 | 10.8737 | 4.0003 | 77,867 |
| Duval | 15.8963 | 10.6701 | 5.2262 | 8,899,894 |
| Escambia | 13.183 | 10.00 | -0-* | |
| Gadsden | 15.50 | 10.45 | 5.05 | 343,313 |
| Gulf | 13.30 | 10.59 | 2.71 | 108,410 |
| Hernando | 12.868 | 10.00 | 2.868 | 235,342 |
| Hillsborough | 14.206 | 10.00 | 4.206 | 6,609,052 |
| Leon | 11.762 | 10.00 | 1.762 | 635,173 |
| Manatee | 12.00 | 10.46 | 1.54 | 485,479 |
| Nassau | 12.42 | 10.86 | 1.56 | 114,887 |
| Orange | 14.80 | 10.40 | 4.40 | 5,343,076 |
| Pasco | 11.425 | 10.00 | 1.425 | 263,289 |
| Pinellas | 17.00 | 10.65 | 6.35 | 9,481,993 |
| Putnam | 14.271 | 11.47 | 2.801 | 354,447 |
| Seminole | 12.75 | 10.44 | 2.31 | 549,573 |
| Taylor | 11.6196 | 10.2593 | 1.3603 | 90,050 |
| Volusia | 14.65 | 10.8936 | 3.7564 | 2,449,349 |
| Walton | 12.00 | 11.00 | 1.00 | 48,930 |
| | | | | $54,074,911 |

* Freeholders voted zero district millage for 1968–69 and 1969–70.