**DIXIE TOBACCO & CANDY COMPANY, INC.**

v.

**Cynthia BRIDGES, Secretary of the Louisiana Department of Revenue**

No. CIV.A.02–CV–577.

United States District Court, M.D. Louisiana.

Jan. 17, 2003.

---

Kyle M. Keegan, David B. Parnell, Christopher D. Kiesel, Roy, Kiesel, Kee-gan & Denicola, Baton Rouge, LA, for Plaintiffs.

Shone T. Pierre, La. Department of Revenue, Office of Legal Affairs, Baton Rouge, LA, for Defendants.

## RULING ON MOTION TO DISMISS

JOHN V. PARKER, District Judge.

This matter is before the court on a motion to dismiss by defendant, Cynthia Bridges, Secretary of the Louisiana Department of Revenue ("Secretary"), based upon Fed.R.Civ.P. 12(b)(1) (doc. 12)[1] and against plaintiff, Dixie Tobacco & Candy Company, Inc. ("Dixie"), who opposes the motion (doc. 14). Plaintiff also urges its own motion for summary judgment (doc. 5) against defendant, who has both responded to the motion (doc. 19)[2] and filed a cross motion for summary judgment (doc. 16). Plaintiff opposes the cross motion (doc. 26). Oral argument was had on December 9, 2002, and for the following reasons, the court determines that it lacks jurisdiction over this matter.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, a wholesale tobacco dealer operating in Louisiana, is a Mississippi corporation with its principal place of business in Bolivar County, State of Mississippi. Plaintiff has a direct purchasing contract with a manufacturer, and from June 1997 to present, has held and renewed a Louisiana tobacco tax wholesale dealer's permit. Plaintiff has consistently paid taxes on tobacco *other than cigarettes* in Louisiana, but since Mississippi has no reciprocal agreement on tobacco

---

1. Erroneously entitled "Motion to Dismiss Pursuant to 28 U.S.C. 12(b)(1)."

2. Defendant has not formally opposed the motion.

other than cigarettes with this state,[3] plaintiff has paid these taxes without the benefit of the 6% tax discount afforded to Louisiana wholesale tobacco dealers and certain out-of-state dealers whose states do have reciprocal agreements with Louisiana. *See* La.R.S. 47:851(B)(2)(b). Plaintiff alleges that from January 1999 to July 2002, it has paid $362,293.08 in taxes on tobacco other than cigarettes, 6% of which totals $21,737.58.

Plaintiff filed its original complaint on June 14, 2002 and on December 18, 2002, shortly after oral argument, plaintiff filed an amended complaint. Both the original and amended complaints pray for a judgment declaring La.R.S. 47:851(B)(2)(b) unconstitutional in violation of the Commerce Clause and for an injunction against the future enforcement of the tax scheme. Defendant has not responded to the amended complaint.

Before the court may entertain any motion for summary judgment or opposition thereto, it must first consider the fundamental jurisdictional issues raised in defendant's motion to dismiss.

### ARGUMENTS

In its motion to dismiss, defendant argues that because the Tax Injunction Act[4] prohibits district courts from enjoining, suspending, or restraining the assessment, levy, or collection of any state tax where a plain, speedy, and efficient remedy may be had in state court, it operates to divest this court of subject matter jurisdiction.

Defendant argues that the tobacco tax statute provides terms for imposing a tax and a discount, as well as definitions detailing the rules and regulations applicable to the tax. As such, defendant argues that this suit challenging the tax and its applicability is one that, either directly or indirectly, seeks to enjoin, suspend, or restrain the assessment, levy, or collection of a tax.

In support, defendant points specifically to Paragraphs seven and eight of the original complaint, where plaintiff states that it "seeks an injunction to prevent Defendant from continuing to enforce this discriminatory tax scheme against the Plaintiff" and that it "has the right to seek judicial review of the tax statute and collections by Defendant which are asserted to be unconstitutional." Defendant argues that if the state discount statute is declared unconstitutional, then the state will be prevented from collecting the entire amount of the taxes as authorized under the statute.

Plaintiff concedes that there exists a plain, speedy, and efficient remedy at state law, namely, through La.R.S. 47:1576, under which a party is allowed to pay a state tax under protest and then sue for the recovery thereof within the time limits established by statute. The statute, conceded by plaintiff, affords the taxpayer a "full and complete adjudication" of the legality and method of enforcement of the tax statute complained of and also provides a state court remedy where the tax is claimed to be an unlawful burden on interstate commerce. Defendant also cites two declaratory judgment articles, La.Code Civ.P. arts. 1871–72, as sources of speedy state remedies.

Plaintiff, who has not received the 6% discount, argues generally that Mississippi, unlike Louisiana, treats all dealers equally

---

**3.** Mississippi has entered into a reciprocal agreement with Louisiana for *cigarette taxes;* therefore, plaintiff receives the same 6% discount on cigarette taxes as do Louisiana wholesale tobacco dealers.

**4.** 28 U.S.C. § 1341

by not giving its own wholesale tobacco dealers a tax discount on tobacco other than cigarettes. Plaintiff contends that Louisiana cannot use the threat of economic isolation as a means to force border states to enter into reciprocity agreements. In its opposition to defendant's motion, plaintiff argues that the 6% tax discount allowed by La.R.S. 47:851(B)(2)(b) is discriminatory against out-of-state wholesale tobacco dealers and, therefore, is in violation of the Commerce Clause of the United States Constitution.

Plaintiff's new argument (under its amended complaint) in favor of the inapplicability of the Tax Injunction Act (and the presence of federal question jurisdiction) is that this is not a case where the district court would enjoin, suspend, or restrain the assessment of a tax. To the contrary, plaintiff now argues that the relief sought will actually aid tax collection efforts, increase tobacco tax revenues, and further protect the integrity of the state treasury. In other words, plaintiff seeks neither an order allowing it to pay less taxes nor a refund or reduction; rather, plaintiff seeks only to have the 6% discount declared unconstitutional, such that Louisiana wholesale tobacco dealers and all out-of-state dealers be required to pay the same amount of taxes on tobacco other than cigarettes.

Plaintiff specifically states that its requested relief is limited to La.R.S. 47:851(B)(2)(b) and that it does not seek a declaration that the entire Louisiana Tobacco Tax statute is unconstitutional, nor does it seek to enjoin defendant from enforcing any provision of the Tobacco Tax Statute other than the 6% discount. Plaintiff argues that because this court retains jurisdiction, discussion of the availability of state remedies is unnecessary.

Because the court rules as it does, there is no need to review arguments made in the parties' motions for summary judgment or their corresponding oppositions.

## LAW AND DISCUSSION

Louisiana's "Tobacco Tax" is found in Chapter 8 of Title 47. Specifically at issue in this case is La.R.S. 47:851(B)(2)(b), which provides as follows:

A six percent discount is allowable for timely and accurately filing such report only on those purchases made by registered tobacco dealers in Louisiana who have a direct purchasing contract with the manufacturer. The secretary may enter into agreements with the proper tax authorities of border states affecting reciprocal agreements whereby wholesale tobacco dealers of such states serving a trade area of retail dealers in this state may be allowed to sell in this state with the benefit of the discount provided, however, in no instance shall the secretary agree to a discount greater than that which is extended to Louisiana wholesale tobacco dealers by the contracting border states and further provided that regardless of the discount extended by other states, such discount agreed to by the secretary shall not exceed six percent, provided said dealers meet the requirements of a wholesale dealer as set forth in Section 842, Paragraph (5). The transfer or disposal by a qualified dealer of any benefit herein conferred is prohibited except in the case of the original recipient.

■ The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Not only does the Act divest district courts of jurisdiction to enjoin, but "the Act also prohibits a district court from issuing a declaratory judgment

holding state tax laws unconstitutional." *California v. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct. 2498, 2507, 73 L.Ed.2d 93 (1982).

As an initial matter, the court notes that La.R.S. 47:851(B)(2)(b) is a "tax" for purposes of the Act. It is a component of a larger tax scheme, found in Chapter 8 of Title 47, entitled "Tobacco Tax," the intent of which is "to levy an excise tax on all cigars, cigarettes and smoking tobacco...." La.R.S. 47:854.[5] Neither party makes an issue of this point.

In opposition, plaintiff asserts that "Dixie does not seek to enjoin, suspend or restrain the collection of any taxes. To the contrary, the relief sought will actually aid collection efforts, increase Louisiana tobacco tax revenues and further protect the integrity of the state treasury." The court disagrees with these statements.

■ In both the original and amended complaints, plaintiff explicitly prays that this court *"enjoin* Defendant... from future enforcement" of La.R.S. 47:851(B)(2)(b) (emphasis added). The court finds that enjoining the "future enforcement" amounts to enjoining the "assessment, levy or collection" of a tax, even though La.R.S. 47:851(B)(2)(b) is a tax discount provision. That is, the enforcement of a discount provision is directly tied to the state's authority to collect taxes—the enforcement simply dictates how much tax revenue the state collects.

Though the complaint's prayer for relief controls, in other parts of the complaint and elsewhere, plaintiff couches its relief in terms of its desire to have all tobacco taxpayers pay the same amount. Presumably, plaintiff would be satisfied not from

having to pay less tax, but rather, if no taxpayer was allowed the advantage of the discount (either because this court enjoined its enforcement or found it unconstitutional). Such a scenario, plaintiff argues, would increase the total state tax revenue.[6]

The court finds that eliminating the tax discount to others (imposing higher taxes on them) fails to give plaintiff any relief. The logical manner in which to relieve an injured party is to dispose of or remove the injury, and the only logical way to do that in this case would be to allow plaintiff the discount as well. The court cannot rewrite the tobacco tax statute so as to impose the tax upon others. Similarly, if the result of this court's ruling required all taxpayers to pay the same (higher) tax, the ruling would effectively require certain third parties to pay additional taxes where no such statutory requirement exists. In both scenarios, the court would be engaging in prohibited judicial legislation.

The court is aware of the line of cases which generally hold that, in certain circumstances, the Act will not bar a suit where the requested remedy is the collection of additional taxes (as opposed to efforts to inhibit tax collection). Though this line of cases is argued to encompass plaintiff's argument that eliminating the discount will increase the state's tax revenue, the court finds the Supreme Court and Fifth Circuit cases cited by plaintiff in support of this rule to be either distinguishable or inapplicable. For example, plaintiff cites *Askew v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971), concerning a suit originally filed to challenge the constitutionality of a state law

---

**5.** The term "tax" should be construed broadly, given Congress's goals in promulgating the Tax Injunction Act. *See Tramel v. Schrader,* 505 F.2d 1310 (5th Cir.1975).

**6.** Plaintiff states in opposition that "the *relief sought* will actually increase the state's collection of tax revenue" (emphasis added).

that allowed for financing of public education through state appropriations and local ad valorem taxes assessed by each school district. The Court's decision (to vacate summary judgment and remand the case for a determination of whether the federal district court should have abstained in deference of a subsequently-filed state court proceeding) had nothing to do with the Tax Injunction Act. Indeed, the Act was never mentioned.

Another case cited by plaintiff, *Griffin v. County School Board of Prince Edward County*, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), was a suit instituted by Black school children, in part, to enjoin defendants from payment of public funds to private schools that excluded students based on race. The Court found the actions of defendants in violation of the plaintiffs' equal protection rights and, therefore, approved the district court's injunction against county officials who were giving tax credits so long as the county's public schools remained closed. In approving the injunction, however, the Court did not reference the Tax Injunction Act. Here again, the opinion never mentioned the Act.

Nearer to the issue is *Hargrave v. McKinney*, 413 F.2d 320 (5th Cir.1969), where the court's "exceedingly narrow" holding was that the Tax Injunction Act was not a jurisdictional bar to a suit attacking the constitutionality of a Florida statute that made funds for the support of public education unavailable to any county imposing on itself more than ten mills ad valorem property tax for educational purposes. If the statute was found unconstitutional on equal protection grounds [7] as plaintiffs desired, then counties could im-

pose taxes upon themselves in excess of the statutorily-imposed limits. According to the court, the suit was not one "to enjoin, restrain or suspend the collection of a tax, but to the contrary [was] a suit to require the collection of taxes which citizens of a county have voted to impose on freeholders in the county." *Id.* at 326. As such, the court found that the suit "does not involve restrictions of the money-gathering power. Rather, this suit is one to compel the collection and disbursement of higher taxes." *Id.* at 326 n. 13. *Hargrave* concerned a county's ability to enact and enforce its own tax scheme without interference from state-imposed taxing caps. The court was not being asked, as Dixie asks this court, to judicially alter an existing tax scheme and thus, to encroach upon a public entity's "money-gathering power." Here Dixie demands that this court levy a tax not now levied by the State of Louisiana. The court lacks the power to levy taxes.

Another Fifth Circuit case cited by plaintiff is *Appling County v. Municipal Electric Authority of Georgia*, 621 F.2d 1301 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980). There, a county, its citizens, and taxpayers sued owners of a nuclear power plant, seeking to collect additional ad valorem taxes on the plant based on the allegation that defendant's interest in the plant was not tax exempt. The court noted that "under Fifth Circuit precedents, § 1341 [the Tax Injunction Act] is inapplicable to the present action because it seeks not to inhibit the collection of taxes, but to require the collection of additional taxes." *Id.* at 1303–1304. This case is easily distinguishable on the grounds that a favor-

---

7. Incidentally, the court noted that its opinion "merely determines the sufficiency of plaintiffs' claim for three-judge relief, and to the extent that the constitutionality of the state

tax scheme is discussed, we express no opinion as to the ultimate resolution of that issue." *Hargrave*, 413 F.2d at 324.

able decision for *Appling County* plaintiffs meant that the named defendants would pay taxes according to an existing tax scheme (with additional tax revenues inuring to the benefit of plaintiffs). Significantly, the entity that would lose the exemption (pay more taxes) was a party to the litigation and would be heard prior to judgment. As alluded to above, a favorable decision here for Dixie would mean that any number of unnamed third parties who would have no opportunity to be heard would be required to pay additional taxes (with additional tax revenues inuring to the benefit of the state, not plaintiffs). Again, plaintiff's relief solicits judicial legislation and restrains the state's power to collect taxes.

Plaintiff's argument, while clever, is not convincing.

Finally, the court finds that a plain, speedy, and efficient remedy exists at state law. In amended complaint, plaintiff states that it does not and will not seek, through federal courts, a refund of any tobacco taxes previously paid. Plaintiff further states that if it does demand a refund of previously paid taxes, it will employ appropriate state administrative proceedings or state courts. The statute containing this acknowledged efficient state remedy for tax refunds (La. R.S.47:1576(A)[8]) also contains efficient state remedies for what plaintiff *does* seek, that is, for an injunction against the future enforcement of La.R.S. 47:851(B)(2)(b) and for a declaratory judgment that La.R.S. 47:851(B)(2)(b) violates the Commerce Clause. Indeed, La.R.S. 47:1576(C) declares, in part, that

> [t]his Section shall afford a legal remedy and right of action in any state court having jurisdiction of the parties and

subject matter, for a full and complete adjudication of any and all questions arising in the enforcement of this Subtitle as to the legality of any tax accrued or accruing or the *method of enforcement* thereof.

(emphasis added). Moreover, Subsection (D) declares, in full, that

> [t]his Section shall be construed to provide a legal remedy in the state courts in case such taxes are *claimed to be an unlawful burden upon interstate commerce,* or the collection thereof, in violation of any Act of Congress or the United States Constitution, or the Constitution of Louisiana.

(emphasis added). Though defendant also directs attention to Louisiana's declaratory judgment articles,[9] the court finds that the provisions of La.R.S. 47:1576 constitute plain, speedy, and efficient state remedies. *Edwards v. Transcon. Gas Pipe Line Corp.,* 464 F.Supp. 654 (M.D.La.1979) (citing *Bland v. McHann,* 463 F.2d 21 (5th Cir.1972), *cert. denied,* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973)).

## CONCLUSION

Accordingly, for the foregoing reasons, the motion to dismiss by defendant, Cynthia Bridges, Secretary of the Louisiana Department of Revenue (doc. 12), is hereby **GRANTED**.

---

**8.** Allows protesting taxpayer to pay the tax under protest and give notice of intention to file suit.

**9.** La.Code Civ.P. arts. 1871—1872.